**Fred DANFORD, Plaintiff,**

v.

**Albert E. SCHWABACHER, Jr., et al., Defendants.**

**No. 71–190.**

United States District Court, N. D. California.

March 23, 1972.

---

2. The maximum sentence for grand larceny is twenty years and for breaking and entering is twenty years. Va.Code §§ 18.1–88, 100.

James C. Gaither, Cooley, Crowley, Gaither, Godward, John Hoffman, Castro & Huddleson, San Francisco, Cal., for plaintiff.

John B. Clark, Miller, Groezinger, Pettit & Evers, Weyman I. Lundquist, Heller, Ehrman, White & McAuliffe,

Robert D. Raven, Morrison, Foerster, Holloway, Clinton & Clark, E. Judge Elderkin, Thomas A. Welch, Brobeck, Phleger & Harrison, James Rosenquist, Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

SCHNACKE, District Judge.

Plaintiff alleges that before the events here complained of, he was for 48 years employed by defendant Schwabacher and Company (Schwabacher) as a salesman and registered representative. He was also a customer of Schwabacher. He maintained a customer account with the firm and had deposited therein his cash and securities having an aggregate market value in excess of $1.5 million. Late in 1967, when Schwabacher was in difficulties known to its partners but unknown to plaintiff, the principal partners induced plaintiff to invest $15,000 to become a general partner of the firm (with an interest of ½ of 1%) and to execute certain documents in connection therewith. Plaintiff alleges numerous misrepresentations and omissions of material fact, made with the intention to deceive and mislead plaintiff, all allegedly for the purpose of misappropriating and gaining control over plaintiff's customer account, to permit such funds to be included in the reports of the available assets of the firm, and to subject those funds to the debts and liabilities of the firm.

The difficulties, which plaintiff alleges were concealed from him prior to his becoming a general partner, multiplied during the year 1968. Early in 1969, it became imperative by reason of the firm's unsatisfactory capital position and other difficulties that Schwabacher be reorganized, and its business merged into that of defendant Blair, another brokerage firm. Plaintiff alleges that he was frightened and coerced into executing documents in connection with the merger and recites various misrepresentations, fraud, concealment, economic duress and undue influence. Blair, itself, is now in grave financial difficulties and is currently in the process of liquidation under supervision of the New York Stock Exchange. In the event that Blair is unable to pay or provide for all of its debts and liabilities to customers, it will be necessary that funds from the special trust fund of the New York Stock Exchange, established to provide for customers of failing brokerage houses, will be called upon to make payments. In the course of the transactions to which plaintiff objects, however, his position has purportedly been converted, with respect to his customer account, from that of a customer to that of a subordinated debenture holder, and as such he would have no prior claim as a customer and no claim upon the special trust fund.

Plaintiff states two claims in his present action: the first, relating to the steps by which he was purportedly made a general partner of Schwabacher, and the second, relating to the acquisition of Schwabacher by Blair and the issuance of securities in connection therewith. Each claim has counts charging violations of § 10(b) of the Securities Exchange Act of 1934 and § 17(a) and § 12(2) of the Securities Act of 1933, and, in addition, counts alleging fraud, negligent misrepresentation and breach of fiduciary duty. These latter counts are based not upon primary federal jurisdiction, but upon the doctrine of pendent jurisdiction. Plaintiff seeks damages, recission and declaratory relief.

Defendants have moved for an order staying this action in accordance with the provisions of § 3 of Title 9 U.S.C. which provides "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon

being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

When plaintiff became a general partner of Schwabacher, he executed a "Second Amendment to Agreement of Limited Partnership" which incorporated by reference the terms and conditions of a prior agreement of limited partnership. The prior agreement, not signed by plaintiff, required arbitration in the event of any differences or disputes arising between any of the partners relating to the firm, or its business or the construction of the agreement, or to any account indebtedness or claim whatsoever. The agreement provided that each side should select one arbiter and the two should agree on a third, or if they failed so to agree, the dispute should be submitted to arbitration under the Constitution and Rules of the New York Stock Exchange, which requires arbitration before a panel selected by the Exchange.

At about the same time, plaintiff also signed an application for allied membership in the New York Stock Exchange, which application recited that the applicant agreed to be bound by the terms of the Constitution of the New York Stock Exchange. Article 8, § 1 of that Constitution requires that any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, be submitted for arbitration in accordance with the provisions of the Constitution and Rules of the Board of Governors.

Defendants contend that plaintiff is thus doubly committed to submitting his claims to arbitration, and has waived his right to have this dispute determined in court.

■■■■ It is plain that this case involves complicated legal and factual issues. Court proceedings would afford the parties full discovery, trial by jury, judicial consideration of the points of law, and a full judicial review. No waiver of these rights should be enforced unless voluntarily and knowingly made. Here the waiver of the right of access to court exists, if at all, by virtue of plaintiff's signature to two documents neither of which specifically sets forth an agreement to arbitrate. Both the second amended partnership agreement and the application for allied membership did no more than to refer to other documents in which the agreement to arbitrate was included. It would seem a harsh result to foreclose access to the court by a waiver thus obtained, particularly in the face of the allegations of fraud.

In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) it was held that, in passing on an application for a stay under the Arbitration Act, the court might not consider a claim of fraud in the inducement of the contract generally, but may consider issues relating to the making and performance of the agreement to arbitrate. The allegations of plaintiff here clearly raise the issue of whether there was any knowing agreement to arbitrate, and whether the arbitration agreement itself was a direct and intended part of the fraudulent scheme. Until those issues are resolved favorably to defendants, it cannot be said that the agreement to arbitrate was voluntarily or knowingly made.

■■■ However, a more basic obstacle to compelled arbitration lies in the provisions of § 14 of the Securities Act of 1933, 15 U.S.C. § 77n [1] and § 29 of the

1. § 77n. Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

Securities Exchange Act of 1934, 15 U.S.C. § 78cc.[2]

In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), § 14 was found to invalidate an agreement to arbitrate future controversies between a securities broker and a customer.

Recent cases have held, with convincing logic, that neither § 14 nor § 29 invalidates agreements of stock exchange members or agreements between dealers to arbitrate in accordance with exchange rules, Brown v. Gilligan, Will & Co., 287 F.Supp. 766 (S.D.N.Y.1968), Axelrod & Co. v. Kordich, Victor & Neufeld, 320 F.Supp. 193 (S.D.N.Y.1970).

The question then, is whether plaintiff brings this action as a customer claiming against a dealer, or whether this is a dispute between dealers or exchange members.

For purposes of determining whether or not a stay must be granted, we are, of course, bound by the fair intendment of the allegations of the complaint, Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D.N.Y.1967). The fair intendment of the allegations here is that the fraud complained of was directed against plaintiff as a customer rather than as an exchange member. At the time the scheme alleged had its first impact on plaintiff, his relationship to Schwabacher, as far as is significant here, was as a customer. It is true that he was a securities salesman and a registered representative, but as such he was not excluded from the protection of § 14. If plaintiff's allegations are accepted, the purpose of the scheme was not to sell him a ½ of 1% interest in the firm for $15,000, but rather to bring plaintiff's account of over $1,500,000 as a customer under the control of the partnership, and each of the succeeding steps, including the reorganization into Blair, contributed to and was part of the original scheme to convert a customer's funds.

A security dealer may not defraud a customer, in the course of the fraud convert him into an exchange member, and thereby deprive him of the protection of the securities laws and of the courts. The provisions of § 14 of the 1933 Act and § 29 of the 1934 Act afford protection to plaintiff as a customer, and make invalid any agreement to arbitrate even if such an agreement had knowingly been made. This cause therefore may not be stayed.

For present purposes, of course, it has been assumed that all allegations of the complaint are true. This court will proceed forthwith to a consideration of all claims alleged unless and until it shall appear that the facts fail to support allegations upon which this denial of stay is based. In that event, if any claims remain unresolved and if it then appears appropriate, further proceedings may be stayed pending arbitration.[3]

Until then, however, the motion to stay proceedings in this action is denied.

---

2. § 78cc. (a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

3. Whether any such arbitration could be under New York Stock Exchange Rules, in the light of the Exchange's possible interest in the outcome by reason of its special trust fund for customers, need not now be decided.