Eli W. TULLIS and Edward F. Creek-
more, Jr., Plaintiffs-Appellants,

v.

KOHLMEYER & CO., in Liquidation,
through its Liquidators, et al.,
Defendants-Appellees.

No. 74–4148.

United States Court of Appeals,
Fifth Circuit.

April 28, 1977.

THORNBERRY, Circuit Judge:

Eli W. Tullis and Edward F. Creekmore, Jr. brought this action under the federal securities laws[1] and Louisiana law against Kohlmeyer & Co. (Kohlmeyer), a New York Stock Exchange member firm in liquidation, and individual members of the firm. The plaintiffs, partners in the firm prior to its demise, claimed that they were induced by misleading statements and omissions of material fact to issue certain secured notes to Kohlmeyer and to pledge securities as collateral for the notes. Kohlmeyer and others moved that the action in federal district court be stayed pending arbitration of the dispute before the Board of Arbitration of the New York Stock Exchange. The court granted the motion and plaintiffs appeal.[2]

Herschel L. Abbott, Jr., Edward B. Poitevent, II, New Orleans, La., for plaintiffs-appellants.

John L. Toler, New Orleans, La., for Kohlmeyer & Co.

Malcolm W. Monroe, Robert G. Stassi, New Orleans, La., for A. H. Vose.

Thomas B. Lemann, Walter J. Suthon, III, New Orleans, La., for Morris & R. Newmann.

George A. Kimball, Jr., E. Harold Saer, Jr., New Orleans, La., for defendants-appellees.

Before TUTTLE, THORNBERRY and TJOFLAT, Circuit Judges.

## I.

During the period of time relevant to this case, Kohlmeyer was a member firm of the New York Stock Exchange (NYSE) engaged in the stock and commodities brokerage business. On January 9, 1967, Tullis, who already was an allied member of the Exchange through a prior association with E. F. Hutton & Co., became a member of the Kohlmeyer firm. Creekmore was admitted as a partner on January 1, 1971. In connection with their admission to the firm, both plaintiffs executed applications for allied membership in the Exchange in which they stated that they had read the Constitution and Rules of the New York Stock Exchange and pledged to abide by them. One such provision, Article VIII of the NYSE Constitution, requires members to arbitrate disputes arising among them.[3]

---

1. The action was based on §§ 12(2) and 17(a) of the Securities Act of 1933, §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, and SEC Rules 10b–5 and 15c1.

2. The parties do not contest the appealability of the stay order, and we find that, though not a "final order," it is appealable since the suit seeks primarily "legal" rather than "equitable" relief. *Cobb v. Lewis,* 488 F.2d 41, 46 (5 Cir. 1974); *see Thompson v. House of Nine, Inc.,* 482 F.2d 888 (5 Cir. 1973); *Mercury Motor*

*Express, Inc. v. Brinke,* 475 F.2d 1086 (5 Cir. 1973).

3. Article VIII, Section 1 of the Constitution of the New York Stock Exchange provides:

Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party . . . be submitted to arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors.

Prior to March, 1973, both Tullis and Creekmore owned marketable securities of substantial value which were held for their account by Kohlmeyer. Although there is a dispute as to whether such securities represented a capital contribution by the partners to the firm, the parties agree that Kohlmeyer was treating the value of the securities as capital for purposes of meeting NYSE requirements concerning the "net capital" of member firms. On June 2, 1972, the Exchange issued a "Member Firm Educational Circular" stating that partners' capital contributions no longer could be directly represented by securities and that after June 1, 1973, all such contributions would have to be in the form of secured demand notes collateralized by a pledge of securities of a specified market value in relation to the notes.

With the objective of meeting this requirement, members of the Kohlmeyer firm approached Tullis and Creekmore in the first months of 1973 and allegedly made misstatements and omissions of material fact concerning the financial status of the firm and its partners, and concerning the capital contributions of other partners. On April 6 Tullis and Creekmore executed Secured Demand Notes to the firm in the amount of $400,000 and $92,000 respectively. To secure the notes, they executed separate Secured Demand Note Collateral Agreements; these agreements pledged each partner's stock and contained an undertaking by Kohlmeyer to pay each of them 4% per annum on the amount of the indebtedness and on the loanable value of the securities which exceeded that amount. Paragraph XII of both of the Secured Demand Note Collateral Agreements contained the following provision:

(e) *Arbitration.* Any controversy arising out of or relating to this Agreement or the breach thereof shall be submitted to and settled by arbitration pursuant to the Constitution and Rules of the Exchange. The parties hereto and all who may claim under them, shall be conclusively bound by such arbitration.

## II.

■ Plaintiffs' primary argument on appeal is that claimants under the federal securities laws have a right to resolution of their claims by a judicial tribunal, and that the right to such an adjudication cannot be waived by voluntary agreement.[4] As authority for their contentions, they point first to the jurisdictional provisions of the 1933 Securities Act and the 1934 Securities Exchange Act, 15 U.S.C. §§ 77v(a), 78aa, which provide that "the district courts of the United States, and the United States courts of any Territory" shall have jurisdiction of securities cases (concurrent with "State and Territorial courts" in 1933 Act cases). Plaintiffs also invoke the "nonwaiver" provisions of the 1933 and 1934 Acts, which provide:

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of

4. Plaintiffs argue alternatively that, even if waiver of one's rights to a judicial hearing is possible, they did not knowingly and voluntarily make such a waiver. By granting the motion for a stay, the district court impliedly found to the contrary, and we must uphold that finding unless it is clearly erroneous. We see no basis for overturning the finding.

Plaintiffs, who are experienced businessmen, admittedly signed the NYSE membership applications which obligated them to arbitrate these disputes. Unlike the situation in *Danford v. Schwabacher*, 342 F.Supp. 65 (N.D.Cal.1972), *app. dismissed*, 488 F.2d 454 (9 Cir. 1973), which they cite, there is no claim that fraud was involved in their agreement to become NYSE members. This being the case, plaintiffs are presumed to have read and understood the obligations they thereby undertook. *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817 (5 Cir. 1975). *See also Commercial Contractors, Inc. v. U. S. Fidelity & Guaranty Co.*, 524 F.2d 944 (5 Cir. 1975); *St. Petersburg Bank & Trust Co. v. Boutin*, 445 F.2d 1028 (5 Cir. 1971). This presumption has not been rebutted; to the contrary, plaintiffs' years of membership in the Exchange and their signing of the Secured Demand Note Collateral Agreements, which provided for arbitration "pursuant to the Constitution and Rules of the Exchange," provide further support for the conclusion that they understood that disputes with their firm would be subject to arbitration.

any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc(a). The effect of the jurisdictional and nonwaiver provisions together is said to be that any person injured in violation of the securities laws has a state or federal court remedy which cannot be waived through an arbitration agreement of any kind.

Substantial support for this theory may be found in the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case, a brokerage firm sued under the 1933 Securities Act by a customer sought to stay the action for arbitration pursuant to a clause in the parties' margin agreement. The Court held that the "non-waiver" provision of the 1933 Act rendered the arbitration clause void; it was a "stipulation" waiving the right to select a judicial forum provided by the Act.

Despite the appeal of this argument, the district court found that the cases of *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766 (S.D.N.Y.1968), and *Axelrod & Co. v. Kordich, Victor, & Neufeld*, 451 F.2d 838 (2 Cir. 1971), counseled its rejection. *Brown* was an action by a customer against her broker for failing to inform her that shares which she purchased through it were not properly registered under the 1933 Act. The firm which originally sold the stock was impleaded and sought to have the controversy submitted to arbitration. The court held that the rules of the New York Stock Exchange constituted a contract between all members and that the arbitration provisions therein had contractual validity. This contract, the court held, was one "evidencing a transaction in commerce" under the United States Arbitration Act, 9 U.S.C. § 2, and therefore the arbitration agreement was "valid, irrevocable, and enforceable". To the argument that the nonwaiver provisions of the 1933 and 1934 Acts nullified such an agreement insofar as the federal securities laws were concerned, the court responded by invoking § 28(b) of the 1934 Act, 15 U.S.C. § 78bb(b), which provides:

> Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes among its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby . . . .

The court held that the stock exchange's rule requiring arbitration of members' disputes was "action" within the meaning of § 28(b). It further held that, because the 1933 and 1934 Acts are *in pari materia*, the section operated to overcome the nonwaiver provisions of the 1933 Act as well as the 1934 Act.

The Second Circuit expressly adopted the *Brown* holding in *Axelrod & Co. v. Kordich, Victor, & Neufeld*, 451 F.2d 838 (2 Cir. 1971). That case involved an agreement by the Kordich firm, not a member of the NYSE, to sell 5,000 shares of stock to Axelrod & Co., a NYSE firm. Axelrod refused tender of the stock and Kordich instituted arbitration proceedings before the Stock Exchange.[5] Axelrod then brought an action in the district court alleging that Kordich had misrepresented the stock in violation of the 1933 and 1934 Acts and sought to stay the arbitration proceedings. The Second Circuit upheld the district court's refusal to do so, holding that Axelrod's agreement, through its membership in the NYSE, to arbitrate disputes was binding on it even where arbitration was sought at the instance of a nonmember which had made no other agreement with Axelrod regarding arbitration. The court relied on *Brown*'s holding that § 28(b) of the 1934 Act overcame the nonwaiver provisions of both Acts, and distinguished *Wilko v. Swan* as a case in which the party seeking to avoid arbitration was "a small investor and not a member firm of an exchange". For that reason, the court noted, the Supreme Court in *Wil-*

---

**5.** The New York Stock Exchange Constitution and Rules require arbitration of disputes between nonmembers and members at the instance of the nonmember, as well as disputes like this one, which are solely between exchange members.

*ko* had no occasion to consider the effect of § 28(b) on the nonwaiver provisions.

Plaintiffs attempt to distinguish this case from *Brown* and *Axelrod* on the ground that they were "outsiders" with respect to the transaction in question. They contend that their securities on account with Kohlmeyer prior to March, 1973, were not contributions of capital, regardless of the treatment given the accounts by the firm, and that their issuance of secured demand notes to Kohlmeyer in April, 1973, evidenced subordinated loans rather than capital contributions to the firm. Accordingly, plaintiffs argue that their position was indistinguishable from that of the general investing public and that the applicable precedent for their case is *Wilko v. Swan* rather than *Brown* and *Axelrod*.

■ We find that the status of the party seeking to avoid arbitration as an "outsider" or "insider" has no more relevance for determining whether arbitration is proper in this case than it does in determining whether the substantive principles of the 1933 and 1934 Acts apply. *See Wheat v. Hall*, 535 F.2d 874 (5 Cir. 1976); *Stier v. Smith*, 473 F.2d 1205 (5 Cir. 1973). The crucial issue, as *Axelrod* and *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2 Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), make clear, is whether the party seeking to avoid arbitration is a member of the Exchange and thus has agreed to arbitration of disputes. If this is the case, as here, then according to *Brown* and *Axelrod* § 28(b) is applicable and overrides the nonwaiver provisions which were the basis of *Wilko*.[6]

Even aside from the fact that there is no precedential basis for the plaintiffs' proposed distinction, an "outsider-insider" inquiry would be unworkable for practical reasons. As the parties' briefs in this case make clear, the issue of whether the defendants possessed material information which was misrepresented or omitted in their dealings with plaintiffs, and thus were

"insiders" vis à vis plaintiffs, is often complex and hotly contested. To make this issue the crucial one for determining the appropriate forum would turn that determination into a dress rehearsal of the trial on the merits, needlessly delaying and complicating litigation which typically is already difficult and burdensome. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Lodge No. 12 v. Cameron Iron Works*, 292 F.2d 112 (5 Cir.), *cert. denied*, 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961).

Plaintiffs cite several cases as authority for their argument that one's status as an "outsider" determines the validity of an arbitration provision to which he has subscribed. In *Danford v. Schwabacher*, 342 F.Supp. 65 (N.D.Cal.1972), *app. dismissed*, 488 F.2d 454 (9 Cir. 1973), a customer and employee of a brokerage house was induced by false representations to invest $15,000 in the firm. In return for the investment, he was made a general partner of the firm and became a member of the exchange. When the firm later became bankrupt and he sued in federal court, the firm sought to stay the proceedings for arbitration. The court denied the motion, concluding that:

> [a] security dealer may not defraud a customer, in the course of the fraud convert him into an exchange member, and thereby deprive him of the protection of the securities laws and of the courts.

342 F.Supp. at 69.

This statement by the court makes it clear why *Danford* does not apply to this case. Here the plaintiffs did not become exchange members during the course of the allegedly misleading inducements; they had been members for six and two years respectively before the events which form the basis of this action took place. For the same reason, the cases of *Laupheimer v.*

---

**6.** The plaintiffs also argue that *Brown* and *Axelrod* are distinguishable because they involved member *firms* rather than *individuals*. But neither § 28(b) nor the NYSE arbitration provisions make such a distinction and we fail to see its relevance to this case.

*McDonnell & Co.*, 500 F.2d 21 (2 Cir. 1974), and *Rice v. McDonnell & Co.*, 386 F.Supp. 315 (S.D.N.Y.1974), are inapposite. Both involved claims that the plaintiff was defrauded and that, *in the course of the fraud*, he was induced to become an exchange member and thereby agree to submit disputes to arbitration.[7]

## III.

For these reasons, we find that this case cannot be effectively distinguished from *Brown* and *Axelrod*. Those cases, however, have no binding effect in our court and the question remains whether we will follow them. We have determined that this is the proper course.

The fact that the court which decided *Axelrod* and *Coenen* is the circuit court "most experienced in the contextual nuances of the relationships involved in this type of case," *Bear v. Hayden Stone, Inc.*, 526 F.2d 734, 736 (9 Cir. 1975), is sufficient to add to the persuasive effect of those decisions. But that court does not stand alone in holding that the agreement to arbitrate incorporated in the agreement to become a member of an exchange is enforceable in securities cases, at least where the agreement is not part of the alleged fraud. The First Circuit as well as several district courts have embraced the holding of those cases. *In re Revenue Properties Litigation Cases*, 451 F.2d 310 (1 Cir. 1971); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith*, 353 F.Supp. 1084 (E.D.Pa.1973); *Isaacson v.*

*Hayden Stone, Inc.*, 319 F.Supp. 1929 (S.D. N.Y.1970); *McDonnell & Co. v. Cohig*, 1970–71 CCH Fed.Sec.Law Rep. ¶ 92,886 (N.Y.S.Ct.1970). *See also Bear v. Hayden Stone, Inc.*, 526 F.2d 734, 736 & n. 3 (9 Cir. 1975) (court held in nonsecurities case that NYSE arbitration agreement was enforceable and noted that "§ 28(b) of the 1934 Act expressly empowers stock exchanges to make rules for settlement of disputes between members").

In addition, we note that this court indicated in *Gardner v. Shearson, Hamill & Co.*, 433 F.2d 367 (5 Cir. 1970), that there is no fatal conflict between the jurisdictional and nonwaiver provisions of the securities laws and arbitration provisions. In that suit against a brokerage house for misrepresentations, the court expressly followed the holding of the Third Circuit in *Moran v. Paine, Webber, Jackson & Curtis*, 389 F.2d 242, 246 (3 Cir. 1968), that

> under the Securities Exchange Act of 1934, the voluntary submission to arbitration of an existing controversy is a valid one and, absent fraud or a basic fault in the proceedings . . . the proceeding is a valid one.

Of course, the submission in this case was not one of an existing controversy, so that *Gardner* does not control our case. It does indicate, however, that this court finds submission of securities cases to arbitration neither foreclosed by the nonwaiver provisions nor a wholly inadequate substitute for court litigation of claims under the Act.

---

**7.** *Newman v. Shearson, Hamill & Co.*, 383 F.Supp. 265 (W.D.Tex.1974), is generally in accord with the discussion above. There, the court denied arbitration on the ground that § 28(b) was inapplicable to the case for three reasons:

> (1) plaintiff is not a member of any exchange; (2) the record herein fully supports this Court's finding that plaintiff did not, with full knowledge and understanding of the consequences, agree to bind himself to arbitrate any disputes; and (3) this case does not involve any action taken by authorities of an exchange to settle disputes. . . . The purpose of Section 28(b) is to promote the self-regulatory functions of the Exchanges. *Axelrod & Co. v. Kordich, Victor, & Neufeld*,

451 F.2d 838 (2 Cir. 1971). That purpose is not served by excluding investors such as plaintiff from the federal courthouse.

383 F.Supp. at 268–69. It is clear enough that the *Newman* plaintiff's nonmembership in any exchange is enough to distinguish that case from this one. It also is true that the agreements to arbitrate which he signed were made, at least in part, during the course of the alleged fraud perpetrated on him; thus the *Danford-Laupheimer* distinction was applicable. However the court's third alternative ground of decision, based upon its interpretation of the word "action" in § 28(b), is clearly contrary to *Brown* and *Axelrod* and to that extent must be disapproved if this circuit follows those decisions.

■ We further find that the statutory and policy underpinnings of the *Brown* and *Axelrod* decisions are sound. Congress clearly intended to preserve for the stock exchanges a major self-regulatory role. *See, e. g.,* 15 U.S.C. §§ 78f(c), 78bb(b). *See also* Sen.Rep.No.94–75. 1975 U.S.Code Congressional & Admin.News, pp. 179, 201. This policy, which is the basis of § 28(b), would be weakened significantly if the arbitration which the exchange deems desirable could be avoided at the will of any party claiming a securities law violation. The scope of Rule 10b–5 and other securities provisions has grown to the point where a great number of the disputes between exchange members may be stated in terms of the securities laws; unless *Brown* and *Axelrod* are the law, the number of cases in which the exchanges will be able to enforce their policy in favor of arbitration will be proportionally smaller.

It seems to us also that there is little reason for the holding in *Wilko v. Swan* to be extended beyond cases involving ordinary investors to those between stock exchange members. As then-Judge Stevens noted in his dissent in *Alberto-Culver Co. v. Scherk,* 484 F.2d 611, 615–18 (7 Cir. 1973), *rev'd* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), there have been important developments "[i]n the two decades since the Supreme Court considered the collision between the two conflicting policies which made *Wilko v. Swan* such a close case". One is the "increasingly strong endorsement" which the policy of encouraging the settlement of disputes by arbitration has received. *See Prima Paint v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1968); *Oil, Chem. & Atomic*

*Workers Int'l Union v. Southern Union Gas Co.,* 379 F.2d 774 (5 Cir. 1967); *Metro Ind. Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 385 (2 Cir. 1961). Another development noted by Justice Stevens was the application of the 1934 Act (which was not involved in *Wilko*) to "negotiated transactions in which the amount at stake typically justifies an independent audit or other verification of the property being purchased or sold, and the transfer of securities is a function of the form in which the parties elect to cast their transaction . . . [In such cases], there is a correspondingly lesser justification for a prohibition against any waiver of the benefits of the Act." 484 F.2d at 617. Regardless of whether Tullis and Creekmore were "outsiders" or "insiders" with respect to the transaction at issue, their membership in the New York Stock Exchange took them beyond the realm of the ordinary investor. Their transaction was not one conducted on the impersonal open market, but one negotiated with them personally by the leading officials of the firm in which they invested. And regardless of whether the secured demand notes involved in this case are technically "securities" or not, they certainly are not the type of securities in which the "ordinary investor" usually deals.

■ For these reasons, we conclude with the courts in *Brown* and *Axelrod* that these securities act claims are not precluded from arbitration by reason of the nonwaiver provisions of the 1934 Act.[8] Accordingly, the stay of this action pending arbitration was proper.

AFFIRMED.

---

8. We further conclude with those courts, and with the parties, that the basic validity of the arbitration agreements is determined by the Federal Arbitration Act, 9 U.S.C. 1 *et seq.* 9 U.S.C. § 2 provides that arbitration provisions in "a contract evidencing a transaction involving commerce" are valid and enforceable; where an arbitration provision is within this definition, federal rather than state law is controlling as to its validity. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209 (2 Cir.),

*cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995 (8 Cir. 1972). Both plaintiffs' contracts of membership in the New York Stock Exchange evidence "transactions involving commerce," since the relationship thereby created clearly involved such commerce. *See Dickstein v. du Pont,* 443 F.2d 783 (1 Cir. 1971); *Varley v. Tarrytown Associates,* 477 F.2d 208 (2 Cir. 1973); *Legg, Mason & Co. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367 (D.D.C.1972). .