Lyle B. HIMEBAUGH, Jr., Plaintiff,

v.

Len S. SMITH et al., Defendants.

Bateman EICHLER, Hill Richards, Inc., a corporation, Third Party Plaintiff,

v.

J. STREICHER & CO., a partnership, Fagenson & Co., Inc., a corporation, Jerome Frankel & Co., a corporation, Campbell & Co., a partnership, M. Peter Yahr, an Individual, and Judson L. Streicher, an Individual, Third Party Defendants.

No. 77–2935–WMB.

United States District Court,
C. D. California.

Oct. 6, 1978.

---

Richard I. Fine, Los Angeles, Cal., Allan K. Peckel, Rabin & Silverman, New York City, for plaintiff.

J. Michael Brennan, Gibson, Dunn & Crutcher, Phillip L. Bosl, Los Angeles, Cal., for third party plaintiff.

Elihu M. Berle, Buchalter, Nemer, Fields & Chrystie, Los Angeles, Cal., for Len S. Smith.

William A. Norris and Alan E. Friedman, Tuttle & Taylor, Los Angeles, Cal., James

Nespole, Joseph A. Clark, III, Reavis & McGrath, New York City, for third party defendants.

## ORDER

WM. MATTHEW BYRNE, Jr., District Judge.

### I. Introduction

This is a class action suit alleging violation of certain anti-fraud provisions of the federal securities laws. On May 4, 1978, the court granted the motion of defendant Bateman Eichler, Hill Richards, Inc. ("Bateman") for leave to file a Third Party Complaint against J. Streicher & Co. and others (jointly hereinafter referred to as the "Joint Account"). The Third Party Complaint states causes of action for indemnity, contribution, and violation of the federal securities laws. The present motions concern the third party plaintiff and defendant.

On November 16, 1977, the Joint Account filed a Statement of Claim with the New York Stock Exchange ("NYSE" or "the Exchange") against Bateman. Both Bateman and the Joint Account are members of the Exchange.[1] The filing of the Statement of Claim with the Exchange initiates the arbitration process.[2] On March 8, 1978, Bateman filed its reply to the claim as well as a counterclaim against the Joint Account. The hearings before the arbitrators were scheduled to begin on April 10, 1978. On April 7, 1978, the Joint Account filed an Amended Statement of Claim.

In response to the amended claim, Bateman moved the arbitrators to exercise their discretion and deny jurisdiction. The arbitrators denied Bateman's motion and also denied its request that the arbitrators adjourn the scheduled hearing dates of May 16 and 17.

Having failed to persuade the arbitrators, Bateman has moved this court for an order

---

1. The Joint Account is a "Specialist" on the Exchange. A Specialist has the unique position of standing in the center of the Exchange marketplace. The Specialist is expected to maintain continually fair and orderly markets in the stocks assigned to him.

2. Arbitration between Exchange members, allied members, member firms or member corporations is required by the Constitution of the New York Stock Exchange. Article VIII, § 1. See discussion at Part II *infra*.

staying arbitration pending litigation of its third party action. In response, the Joint Account seeks an order staying the third party action pending arbitration. On May 11, 1978, the court granted temporary relief staying the arbitration proceedings scheduled for May 16 and 17. On June 15, 1978, the court ruled orally that the third party action would be stayed pending arbitration.[3] This written order is intended to supplement and amplify the oral ruling.

Bateman contends that while the original claim stated only an "intramural dispute" which was appropriate for arbitration, the revised claim alleges the existence of a "massive securities fraud", and the public interest in such a dispute requires its resolution in a federal court rather than an arbitration forum. In opposition to the motion to stay arbitration and in support of the motion to stay the third party action, the Joint Account's arguments may be reduced to two. First, it urges that there is no substantial difference between the original and amended claims and the original claim put Bateman on notice of the full scope of the issues in dispute. Since Bateman did not object to the jurisdiction of the Exchange when the original claim was filed,[4] the Joint Account asserts that Bateman has waived any right it may have had to object to the jurisdiction of the arbitration panel. Second, the Joint Account contends that even if there is a significant difference between the original and amend-

ed claims, the arbitration forum is nonetheless the proper place to resolve this dispute.

## II. The Original and Amended Statements of Claim

■ In their papers and at oral argument attorneys for the Joint Account have emphatically asserted that the amended claim did not alter the nature of its dispute with Bateman but merely filled in missing information, much of which was revealed by the findings of a report by the NYSE Disciplinary Panel,[5] which became available after the original claim was filed. The Joint Account contends that the basis of its dispute with Bateman is that Bateman, through its employee Len Smith, "unloaded" on the Joint Account a block of approximately 174,000 shares of Frigitronics stock, which stock had no market. This allegation, it contends, remains unchanged from the original to the amended claim.

Although the sale by Smith to representatives of the Joint Account is the triggering event which underlies both the original and amended claims, the alleged misrepresentations and omissions are vastly different in the two statements of claim. The original claim alleges two omissions or misrepresentations,[6] namely, that Bateman failed to reveal to the Joint Account that it was the seller of the 174,000 share block,[7] and that it no longer had an intention to be in the market for substantial amounts of Frigitronics stock.[8]

3. A brief written order denying the motion to stay the arbitration and granting the motion to stay the third party action was filed on June 20, 1978. The parties agreed at oral argument that the court had to decide between arbitration or litigation. Therefore, since the motion to stay the arbitration was denied, it followed that the motion to stay the third party action was granted.

4. The Joint Account contends that Bateman was or should have been aware of the full scope of the allegations when the original Statement of Claim was filed. It not only failed to object to the jurisdiction of the Exchange, but, indeed, participated in the arbitration process by answering and counterclaiming.

5. The Disciplinary Panel filed its findings on March 21, 1978. The original Statement of Claim was filed on November 16, 1977.

6. The Statement of Claim contains other background information and further allegations, including allegations of violation of some federal securities laws. Moreover, the claim states: "At the present time, the claimant is unable to set forth any additional material facts known to Bateman Eichler that were not communicated to the claimant since knowledge of such facts is unique to Bateman." However, the thrust of the Statement of Claim is the allegation of two specific omissions or misrepresentations.

7. Statement of Claim Paragraph I (1).

8. *Id.* at Paragraph I (2).

The amended claim begins with the statement that Bateman engaged in wrongful and illegal conduct involving material misrepresentations, "including stating that its substantial buying interest in the stock would continue while omitting to state that Bateman Eichler itself was the seller."[9] This single statement encompasses virtually all of the original claim. Indeed, the Joint Account seems to concede as much, for in the paragraph immediately following the above-quoted statement the Joint Account alleges: "The *additional* omissions to state material facts which form the basis for this Amended Statement are . . . ."[10] (Emphasis added). The next four pages of the amended claim, virtually the entire document, state alleged omissions additional to those in the original statement of claim.

Although Bateman was probably aware that the Joint Account's original claims were only a small part of the broader picture, Bateman could reasonably conclude that the arbitration would be limited to the issues of whether Bateman conveyed to the Joint Account the erroneous conclusions that the block of stock sold to the Joint Account did not belong to Bateman and that Bateman had a continued interest in Frigitronic's stock. By participating in the arbitration process until the filing of the amended claim, Bateman did not waive its right to object to the arbitration forum when the new claim substantially altered the parameters of the arbitration.

### III. Arbitration or Litigation

■ The amended claim alleges omissions and misrepresentations which allegedly violate the federal securities laws and which constitute a scheme of "massive fraud and manipulation." The question presented here is whether these claims *must* be resolved in a federal court. As noted previously, both Bateman and the Joint Account are members of the Exchange and are therefore bound by the terms of the Exchange constitution. The constitution provides, in part:

> "*Any controversy* between parties who are members, allied members, member firms or member corporations *shall* at the instance of any such party, . . . be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Exchange." Article VII, § 1. (Emphasis added.)

Since Bateman is bound by the terms of the Exchange constitution to arbitrate its dispute with the Joint Account, it has the burden of proving that there is some overriding policy which relieves it from its obligation to arbitrate.

Bateman contends that this overriding policy which renders arbitration in the present case inappropriate is enunciated in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) and its progeny. In *Wilko* a stock purchaser sued the partners of the selling brokerage house seeking damages under § 12(2) of the Securities Act of 1933.[11] The defendants moved to stay the action pending arbitration, which was mandatory under the margin agreement entered into between the purchaser and the seller. The plaintiff contended that the mandatory arbitration provision was invalidated by § 14 of the Act, which provided that any condition which resulted in the waiver of any provision of the Act was void. The Supreme Court concluded:

> "The words of § 14 . . . void any 'stipulation' waiving compliance with any 'provision' of the Securities Act. This arrangement to arbitrate is a 'stipulation,' and we think the right to select the judicial forum is the kind of 'provision' that cannot be waived under § 14 of the Securities Act." 74 S.Ct. at 186.

*Wilko*, however, did not involve a dispute between two Exchange members, nor was the arbitration clause in question the one

---

9. Amended Statement of Claim at 2.

10. *Id.*

11. The Securities Act of 1933 is hereinafter referred to as the 1933 Act. The Securities Exchange Act of 1934 is hereinafter referred to as the 1934 Act. These two statutes and the rules promulgated under them are jointly referred to herein as the federal securities laws.

contained in the Exchange constitution. In a line of cases where a dispute involving alleged violations of the securities laws has arisen between members of the Exchange, *Wilko* has been distinguished and therefore not applied.

In *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766 (S.D.N.Y.1968), a purchaser of the common stock of Westec Corporation sued her broker under the 1933 and 1934 Acts for failing to inform her that the shares which she purchased were not properly registered. Defendant Gilligan impleaded Cohn, Delaire & Kaufman, a member of the American Stock Exchange, which in turn impleaded Eastman Dillon, Union Securities & Co., also a member of the American Exchange. Eastman then moved to stay the action brought against it by Cohn pending arbitration in accordance with the constitution of the American Exchange.[12]

The court concluded that the mandatory arbitration provision had contractual validity and rejected the non-waiver argument of *Wilko*, relying on the language and policy of § 28(b) of the 1934 Act.[13] The court wrote:

"In contrast to *Wilko*, both parties involved in the present motion for a stay are broker-dealer firms belonging to AMEX. The 1933 Act was designed to protect investors by requiring 'issuers, underwriters, and dealers to make full and fair disclosure of the character of securities sold in interstate and foreign commerce and to prevent fraud in their sale.' *Wilko v. Swan, supra*, 346 U.S. at 431, 74 S.Ct. at 184. Its determined purpose was not to furnish protection to dealers from the improprieties of fellow dealers, although such might be an incidental benefit of the Act's passage. It was assumed that dealers could fend for themselves; it was the investing public that was in need of protection.

Permitting broker-dealers to agree in advance to arbitrate controversies arising between them would not appear to offend the congressional intent underlying passage of the 1933 Act." 287 F.Supp. at 771–72.

The reasoning of *Brown* was followed in two Second Circuit cases, *Axelrod & Co. v. Kordich, Victor & Neufeld*, 451 F.2d 838 (2d Cir. 1971), *Coenen v. R. W. Presprich & Co.*, 453 F.2d 1209 (2d Cir. 1972), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337.

A recent case to adopt the reasoning of *Brown, Axelrod*, and *Coenen* is *Tullis v. Kohlmeyer & Co.*, 551 F.2d 632 (5th Cir. 1977). Plaintiffs Tullis and Creekmore, allied members of the Exchange, were former partners of the defendant company, a member of the Exchange. Plaintiffs alleged that they were induced by misstatements and omissions of defendant to issue notes and pledge security to defendant. The defendant sought to stay the suit and compel arbitration. The district court stayed the litigation, and the Fifth Circuit affirmed.

The court discussed the *Wilko, Brown, Axelrod*, and *Coenen* decisions, and concluded that *Wilko* was not applicable, writing, in part:

". . . [T]he agreement to arbitrate incorporated in the agreement to become a member of an exchange is enforceable

---

**12.** The American Stock Exchange ("AMEX") has a constitutional provision requiring arbitration of disputes between members similar to that of the NYSE. *See* Article VIII, § 1 of the AMEX Constitution.

**13.** § 28(b) of the 1934 Act provides:
"Nothing in this title shall be construed to modify existing law with regard to the binding effect (1) on any member of or participant in any self-regulatory organization of any action taken by the authorities of such organization to settle disputes between its members or participants, (2) . . . . or (3)

of any action described in paragraph (1) or (2) on any person who has agreed to be bound thereby." 15 U.S.C. § 78bb(b).
The 1933 Act *does not* contain the above-quoted language of § 28(b) of the 1934 Act. However, this court concurs with others which have concluded that Congress must have intended that this provision be equally applicable to controversies which arise between Exchange members under the 1933 Act. *See Brown v. Gilligan, Will & Co., supra*, 287 F.Supp. at 775; *Axelrod & Co. v. Kordich, Victor & Neufeld, supra*, 451 F.2d at 843.

in securities cases . . . ." 551 F.2d at 637.

The court observed that if the mere assertion of securities law violations could result in the avoidance of the agreement to arbitrate, the policies favoring arbitration and Exchange self-regulation would be severely thwarted. The court stated:

"We further find that the statutory and policy underpinnings of the *Brown* and *Axelrod* decisions are sound. Congress clearly intended to preserve for the stock exchanges a major self-regulatory role. . . . This policy, which is the basis of § 28(b), would be weakened significantly if the arbitration which the exchange deems desirable could be avoided at the will of any party claiming a securities law violation. The scope of Rule 10b–5 and other securities provisions has grown to the point where a great number of the disputes between exchange members may be stated in terms of the securities laws; unless *Brown* and *Axelrod* are the law, the number of cases in which the exchanges will be able to enforce their policy in favor of arbitration will be proportionally smaller." *Id.* at 638.[14]

Two Ninth Circuit cases discuss the arbitration versus litigation issue in disputes between Exchange members, but neither is apposite. In *Muh v. Newberger, Loeb & Co., Inc.*, 540 F.2d 970 (9th Cir. 1970), an ex-allied member of the Exchange sued a former Exchange member under a breach of contract theory seeking to recover fees under a consulting agreement. The defendant sought to stay the litigation, pending arbitration. The Ninth Circuit upheld the district court's stay of litigation. The court noted the uniqueness of the securities industry in its self-regulation. *Muh,* however, did not involve any securities law claims.

In *Bear v. Hayden, Stone, Inc.*, 526 F.2d 734 (9th Cir. 1975), an ex-allied member of the Exchange brought a damage action against his former employer, a member firm. Defendant sought to stay the action pending arbitration, and the Ninth Circuit overturned the district court's denial of the motion to stay the litigation. The court termed the dispute as an "intracompany" matter, and held that the "any controversy" language of the Exchange constitution was to be given a reasonable meaning, which included the dispute at issue in *Bear.* The court in *Bear* observed in two footnotes that in certain cases arbitration would not be proper, writing:

"In situations where public policy dictates that an administrative or judicial body have primary jurisdiction, arbitration may not be ordered unless the waiver of the statutory right follows the controversy. . . ."

"The most obvious example of protective legislation that impinges on the arbitration provision of the NYSE constitution is embodied in the federal securities laws. . . ." *Id.* at 735, notes 2 and 3.

The factual issue mentioned in the footnote was not, however, raised in *Bear.*

The *Brown* line of cases finds persuasive the policy of promoting self-regulation of the Exchange through the use of arbitration as a conflict resolution device. The respective courts have concluded that allegations of securities law violation should not inhibit the policy of Exchange self-regulation.

In *Allegaert v. Perot,* 548 F.2d 432 (2d Cir. 1977), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084, however, the same court which adopted the reasoning of *Brown* in *Axelrod* and *Coenen* refused to stay litigation in favor of arbitration. Plaintiff was a trustee in bankruptcy who brought actions against twenty defendants arising from the collapse of one of the major Wall Street brokerage houses. Plaintiff alleged violation of the federal

---

**14.** For further support for the conclusion that Congress intended a broad self-regulatory role for the Exchanges, *see, e. g.,* 15 U.S.C. §§ 78f(c), 78bb(b). *See also* Sen. Rep. No. 94–75, 1975 U.S. Code Cong. & Ad. News, 179, 201. *Alberto-Culver Co. v. Scherk,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

securities laws. In discussing whether arbitration was appropriate the court noted three relevant factors for consideration: (1) the public interest in the dispute, (2) the degree to which the nature of the evidence makes the judicial forum preferable, and (3) the extent to which the agreement to arbitrate was a product of free choice. The court concluded that the first two factors favored arbitration.

The court relied heavily on the public interest factor and found that the public had an interest in the dispute for at least three reasons. First, plaintiff was a trustee in bankruptcy. Second, the case involved the collapse of one of the major brokerage houses on Wall Street. Third, there were allegations of securities law violations. As to the last factor, the only one present in the instant case, the court observed:

> "A claim of wholesale fraud of institutional dimension, especially when raised by a trustee, does not fall within the rationale of the exception [to the *Wilko* rule]. This is more than a mere internal brokerage industry squabble; it raises broad questions of policy which ordinarily should be handled by the judiciary for reasons similar to those why an antitrust claim should not ordinarily be arbitrable. *See American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 825–29 (2d Cir. 1968). *Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973)." *Id.* at 437.

■ Even if *Allegaert* were the law of this circuit, it has for several reasons only marginal implication in the present case. First, none of the parties in the present case is a trustee in bankruptcy. Second, although the alleged fraudulent scheme is a substantial one, it is probably not one of "wholesale fraud of institutional dimension." The allegations of fraud in the present case pale in comparison to those in *Allegaert*, and there appears to be no "institutional dimension" to the alleged scheme herein. Finally, arbitration of the Bateman versus Joint Account claims will not block the litigation of the similar but broader claims of the class against Bateman. Therefore, the public policy which demands a litigation forum for the resolution of securities fraud allegations is satisfied even if the arbitration proceeds.

■ When Bateman became a member of the Exchange it bound itself by the terms of the Exchange constitution, which mandates arbitration of disputes between Exchange members. This court agrees with the *Brown, Axelrod, Coenen,* and *Tullis* courts which concluded that the mandatory arbitration provision is a valid exercise of the self-regulatory power of the Exchange granted by Congress. *See also Muh v. Neuberger, Loeb & Co., Inc., supra; Bear v. Hayden Stone, Inc., supra.*

■ There may be circumstances where the allegations of violation of securities laws *along with the presence of other factors* make arbitration between two Exchange members inappropriate. *See Allegaert v. Perot, supra; Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, CCH Fed.Sec.L.Rptr. ¶ 96,194 (S.D.N.Y.1977).[15] There is, however, a weighty presumption that arbitration is appropriate. Simply the assertion of securities law violations or even the assertion of massive securities law violations does not automatically overcome the presumption in favor of arbitration. The language of § 28(b) of the 1934 Act[16] indicates that Congress did not intend the pres-

---

15. Some courts have found the arbitration forum inappropriate in some cases which do not involve Exchange members and/or securities law allegations. *American Safety Equipment Corp. v. J. P. Maguire*, 391 F.2d 821 (2d Cir. 1968) (private antitrust action where parties had agreed to arbitration in a private trademark licensing agreement); *Greater Continental Corp. v. Schecter*, 422 F.2d 110 (2d Cir. 1970) (securities law allegations in employment contract containing arbitration clause). *See also Neuman v. Shearson Hamill & Co.*, 383 F.Supp. 265 (W.D.Tex.1974); *Katz v. Shearson Hayden Stone, Inc.*, 438 F.Supp. 639 (S.D.N.Y. 1977).

16. The language of § 28(b) is set out in note 13 *supra.* At note 13 *supra*, this court concluded that § 28(b) was applicable to the 1933 as well as the 1934 Act.

ence of securities law violation allegations to void the mandatory arbitration provision of the Exchange constitution.

■ Arbitration in the present case may result in the consideration of the same or similar issues in two forums. However, the presence of related litigation should not inhibit the mandatory arbitration process which is an integral part of Exchange self-regulation.

■ This court concludes that the public interest will not be disserved by the arbitration of the Bateman versus Joint Account dispute. Bateman has failed to overcome its burden of showing that arbitration is inappropriate. Therefore, the litigation of the third party action of Bateman against the Joint Account will be stayed pending arbitration of the Joint Account's claims against Bateman.

### IV. Bateman's Appeal

#### A. Introduction

Bateman intends to appeal this court's denial of its motion to stay the arbitration and the court's granting of the Joint Account's motion to stay the third party action. Bateman moves the court for a stay of its orders pending Bateman's appeal. Alternatively Bateman seeks a stay long enough to allow it to seek a stay from the Ninth Circuit Court of Appeals. Finally, Bateman moves the court to amend its order incorporating the language of 28 U.S.C. § 1292(b), thus certifying its rulings for appeal.

#### B. Stay Pending Appeal

Rule 62(c) of the Federal Rules of Civil Procedure allows the court in its discretion to stay an injunctive order pending appeal. The parties agree that the court should consider four factors in exercising its discretion: (1) whether the applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury absent the stay; (3) whether the stay will substantially harm other interested parties; and (4) whether the stay will harm the public interest. *See,*

*e. g., Schwartz v. Covington,* 230 F.Supp. 249, 252 (N.D.Cal.1964), *mod.* and *aff'd,* 341 F.2d 537, 538 (9th Cir. 1964); *Long v. Robinson,* 432 F.2d 977 (4th Cir. 1970); *Belcher v. Birmingham Trust Nat'l Bank,* 395 F.2d 685, 686 (5th Cir. 1968); *H–3 Association v. Volpe,* 353 F.Supp. 14, 16 (D.Hawaii 1972); *Armstrong v. O'Connel,* 416 F.Supp. 1325 (E.D.Wis.1976); 7 Moore's Federal Practice ¶ 362.05 at 62–25.

This court is persuaded that the success on the merits factor cannot be rigidly applied. If it were so applied, a stay would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination of the merits. Confronted with this problem, the Court of Appeals for the District of Columbia recently concluded:

> "Prior recourse to the initial decisionmaker would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision. What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Washington Metropolitan Area, etc. v. Holiday Tours,* 559 F.2d 841, 844 (D.C.Cir.1977).

*Accord Evans v. Buchanan,* 435 F.Supp. 832 (D.Del.1977).

The arbitration versus litigation issue in the present case clearly raises some difficult questions of law and policy. Moreover, there is no Ninth Circuit authority directly on point. This court concludes, however, that the other factors—the equities—do not weigh in favor of a stay.

■ If Bateman is forced to arbitrate now the most significant harm which it will suffer is the time and expense of arbitration. However, an arbitration award is not self-executing, and the time and expense of a wasted arbitration is injurious, but not irreparable. *Mesabi Iron Co. v. Reserve Mining Co.,* 268 F.2d 782, 783 (8th Cir. 1959). *See also Stateside Machinery Co., Ltd. v. Alperin,* 526 F.2d 480, 483–84 (3d

Cir. 1975); *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 185 (1st Cir. 1972). *Contra, Camden Industries Co. v. Carpenters Local Union No. 1688*, 246 F.Supp. 259, 260 (D.N.H.1965). Although Bateman may suffer the expense of an inappropriate arbitration, the results of the arbitration will not preclude Bateman from later asserting the inappropriateness of the arbitration forum. Arbitration, therefore, will not result in irreparable injury to Bateman.

■ The other equitable considerations—possible harm to the Joint Account and the public interest if the orders are stayed—do not weigh heavily in either direction. A delay in arbitration will be harmful to the Joint Account and to the public, which has an interest in the speedy resolution of arbitrable matters.[17] However, in the case of the public and the Joint Account, the delay is not a significant factor.

The court concludes that Bateman has failed to show that it will suffer irreparable harm if a stay is not granted. Therefore, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, the motion for a stay is denied.

17. If this court had concluded that arbitration was inappropriate, then there would be a public interest in not having the arbitration. Thus, the public interest in a stay pending appeal depends on the court's determination of the merits. Consequently, the public interest factor is not weighty.

18. Bateman apparently intends to appeal two orders—one granting the motion to stay the third party action and the other denying the motion to stay the arbitration. There is some question whether one or both of the orders are appealable interlocutory orders under 28 U.S.C. § 1292(a). At least the order denying the motion to stay the arbitration is probably appealable under 28 U.S.C. § 1292(a). *See A & E Plastik Pak v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1970); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980 (9th Cir. 1970). However, some circuits have clearly held that orders denying a stay of arbitration are not appealable. *See Stateside Machinery Co., Ltd. v. Alperin, supra; New England Power Co. v. Asiatic Petroleum Corp., supra.*

### C. Temporary Stay

■ As an alternative to its motion for a permanent stay pending appeal, Bateman seeks a temporary stay to allow it appropriate time to move the Ninth Circuit Court of Appeals for a stay. In order to allow the parties and the Court of Appeals to more orderly prepare and consider a motion to stay, this court grants Bateman's request for a temporary stay. *See Kansas City Royals v. Major League Baseball Players Ass'n.*, 409 F.Supp. 233, 270 (W.D.Mo.1976); *DiMela v. Bowles*, 57 F.Supp. 710 (D.Mass. 1974). Accordingly, the court's orders denying the motion to stay the arbitration and granting the motion to stay the litigation will be stayed for thirty days from the date of entry of this written order.

### D. Certification [18]

■ Bateman seeks an amendment to the orders of this court adding language which would make the orders appealable under 28 U.S.C. § 1292(b).[19] Pursuant to the language of § 1292(b), Bateman must show that (1) a controlling question of law is raised, (2) there is a difference of opinion on that legal question, and (3) an immediate appeal would materially advance the ultimate termination of the litigation.

The interlocutory order question is not before this court. But to avoid the result should the Ninth Circuit change its mind on interlocutory appeal of orders denying stay of arbitration, Bateman seeks to amend the court's orders adding the language of 28 U.S.C. § 1292(b). There is some authority for more flexibly applying § 1292(b) when part of the package is appealable under § 1292(a). *See* Wright and Miller, *Federal Practice and Procedure* § 3929 at 150. Even with the application of a flexible approach, this court concludes that certification is improper. See discussion *infra.*

19. Bateman seeks to amend the orders to include the following language:

"In the opinion of the Court this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Certification is intended to be used in the few situations where an immediate appeal of a particular issue would more speedily terminate the litigation. *See United States v. Woodbury,* 263 F.2d 784, 787 (9th Cir. 1959). The two orders at issue raise a difficult central question which probably satisfies the "difference of opinion" requirement. *See In Re Heddendorf,* 263 F.2d 887, 889 (1st Cir. 1969). And the orders clearly have a substantial impact on the conduct of the litigation which satisfies the "controlling question" requirement. *See Lear Siegler, Inc. v. Adkins,* 330 F.2d 595, 598 (9th Cir. 1964). However, the immediate appeal will not advance the termination of the litigation. The underlying class action will proceed regardless of whether the third party action or the arbitration proceed. Thus, the termination of the third party action could be advanced only if the underlying class action was stayed. However, it makes no sense to attempt to speedily terminate the third party action at the cost of delay to the underlying class action.

The court concludes, therefore, that Bateman has failed to satisfy the requirements for certification under 28 U.S.C. § 1292(b). Accordingly, Bateman's motion seeking an amendment of the orders to add the language of § 1292(b) is denied.

V. Conclusion

For the foregoing reasons,

IT IS HEREBY ORDERED that:

(1) The motion to stay the arbitration of the Joint Account versus Bateman dispute is denied.

(2) The motion to stay the litigation of the third party action of Bateman versus the Joint Account is granted.

(3) The motion to permanently stay the enforcement of the above two orders pending appeal is denied.

(4) The enforcement of the orders denying the stay of arbitration and granting the stay of the third party action is stayed for thirty (30) days from the date of entry of this order or until such time as the Ninth Circuit Court of Appeals rules on a motion for a permanent stay pending appeal, whichever first occurs.

(5) The motion to amend the orders denying the stay of arbitration and granting the stay of the third party action to add the language of 28 U.S.C. § 1292(b) is denied.