**In re the REVENUE PROPERTIES LITIGATION CASES.**

**Appeal of COHN, DELAIRE & KAUFMAN.**

**No. 71–1167.**

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1971.

Decided Nov. 15, 1971.

Norman W. Bernstein, New York City, with whom Hays, Feuer, Porter & Spanier and Zevie B. Schizer, New York City, were on brief, for appellant.

John J. Curtin, Jr., Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., and Shearman & Sterling, New York City, were on brief, for appellee.

Before McENTEE and COFFIN, Circuit Judges, and BOWNES,* District Judge.

COFFIN, Circuit Judge.

This is a small offshoot of a complex 31-suit multidistrict litigation case. Securities buyer A sued broker B (appellee-White, Weld) and others for selling unregistered stock and using material misrepresentations in procuring the sale. Broker B brought a third-party suit against its co-defendants, and others, including broker C (appellant-Cohn, Delaire), all of whom were involved directly or indirectly in sales to A of the stock in question, seeking indemnity to such extent as it might be held liable. B also sought a declaratory judgment of indemnification against C and others. After all the suits, including the two involving C, were consolidated and assigned to the Massachusetts district court, C moved for a stay of litigation against it pending arbitration pursuant to the constitution and rules of the American Stock Exchange, of which both B and C were members.[1] The court denied the motion and this appeal followed.

---

* Sitting by designation.

1. Section I of Article VIII of the American Stock Exchange constitution provides in relevant part that

"members, member firms, partners of member firms, member corporations and officers and holders of stock in member corporations shall arbitrate all controversies arising in connection with their

The initial suit, the third-party suit, and the declaratory judgment action all involve causes under both the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. White, Weld, in resisting arbitration, relies on the "nonwaiver" provisions of both Acts, Section 14 of the Securities Act, 15 U.S.C. § 77n,[2] and Section 29(a) of the Securities Act, 15 U.S.C. § 78cc(a).[3] Its contention is that it is guaranteed the right to a judicial forum by both Acts, 15 U.S.C. §§ 77v(a) and 78aa, and that this right cannot, by virtue of the above "nonwaiver" provisions, be taken away by any pre-agreement to arbitrate. It relies on Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Cohn, Delaire relies principally on Section 28 (b) of the Securities Exchange Act, 15 U.S.C. § 78bb(b) which recognizes "the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members"[4] and Brown v. Gilligan, Will & Co., 287 F. Supp. 766 (S.D.N.Y.1968), which held that an arbitration agreement between stock exchange members would be enforced as to causes asserted under both the Securities Act of 1933 and the Securities Exchange Act of 1934.[5]

The court in Brown v. Gilligan, Will & Co. noted, first, that the arbitration agreement subscribed to by stock exchange members in accepting the constitution and rules of the exchange was a binding contract within the scope of the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, as well as valid under state law. It then construed *Wilko* as recognizing that the 1933 Act was concerned with protecting security buyers rather than dealers.[6] Concluding that enforcement

---

business between or among themselves. . . ."

Section 3 of Article VII directs the Board of Governors to "prescribe rules regarding arbitration and the conduct of arbitration proceedings." The Board has satisfied this mandate by adopting Rules 600 to 610 relating to arbitration.

2. Section 14 provides:
"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

3. Section 29(a) provides:
"Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

4. Section 78bb(b) provides:
"Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby, or (3) with regard to the binding effect on any such member of any disciplinary action taken by the authorities of the exchange as a result of a violation of any rule of the exchange, insofar as the action taken is not inconsistent with the provisions of this chapter or the rules or regulations thereunder."

5. Since oral argument in the present case, the Second Circuit in Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (1971), has considered the scope of a stock exchange member's responsibility to arbitrate at the request of a non-member disputes arising under the Securities Acts and, relying principally on Brown v. Gilligan, Will & Co., *supra*, has decided in favor of arbitration.

6. 287 F.Supp. at 771.
"Underlying the court's determination was the knowledge that the 1933 Act was passed for the purpose of protecting investors; it 'was drafted with an eye to the disadvantages under which buyers labor.' Id. at 435, 74 S.Ct. at 187. When a security buyer waives his right to sue in court, prior to any violation of the 1933 Act, he surrenders 'one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary.' Id. at 435, 74 S.Ct. at 187." (Footnote eliminated.)

of arbitration as between exchange members would frustrate no congressional policy, *Brown* addressed the non-waiver provisions, finding them substantially identical. It further held that the recognition of the arbitral method of 15 U.S.C. § 78bb(b) carved out an exemption for arbitration from the non-waiver provision of Section 29(a) of the 1934 Act. And, deeming both Acts *in pari materia,* it held that the same exemption applied to the 1933 Act.

■ We agree with the result, and do not disagree with the reasoning. Our reading of the Securities Act of 1933, however, leads us to believe that there is a shorter route supporting that result. We note first that the non-waiver provision of the Securities Act of 1933 by its terms cannot apply to White, Weld. Section 14 refers to any "condition * * * binding any person acquiring any security". White, Weld made its purchases from Cohn, Delaire, a so-called two-dollar broker,[7] on behalf of a principal. Allegedly it purchased some shares as a principal but immediately resold them to its customer. In any event the transactions were made without the apparatus of any formal contract or margin agreement. It is clear that the agreement to arbitrate which bound White, Weld bore no relation to its purchases from Cohn, Delaire but stemmed solely from provisions of the exchange constitution and rules to which both White, Weld and Cohn, Delaire had freely assented when they became members of the exchange. In short, it was not a "condition, stipulation, or provision binding any person acquiring any security." White, Weld was subject to a binding provision to arbitrate but in its capacity as member of the exchange, with the attendant benefits and the concurrent statutorily-imposed responsibilities of such position. The agreement to arbitrate was not imposed as a requirement for the acquisition of a security or

as a supposed inducement to its sale. *Wilko,* on the other hand, dealt with margin agreements containing arbitration clauses which a buyer entered into in connection with his purchases, such agreements clearly falling within the coverage of Section 14, 15 U.S.C. § 77n.

■ As to the 1934 Act, the non-waiver provision, Section 29(a), 15 U.S.C. § 78cc(a), refers only to "any person", dropping the words "acquiring any security". This might make a difference, but for Section 28(b) which specifically recognizes the binding effect of exchange action to settle disputes between members. White, Weld argues that the last clause, "insofar as the [arbitral] action taken is not inconsistent with the provisions of this chapter or the rules and regulations thereunder", means that arbitration cannot be resorted to on any question involving the Securities Acts if one party wishes to invoke his right to a judicial forum. We understand this argument to be that Section 28(b) means that exchange action in settling disputes between members is binding unless either party wishes to go to court. Such a reading would effectively reduce Section 28(b) to mere exhortation. We do not so read it.

■ White, Weld makes one more point. It points out that if it is compelled to arbitrate, issues important to the securities industry could be decided, with only the limited review envisaged by 9 U.S.C. § 10. The logic of this argument implies a prerequisite to arbitrability: that only issues not heavily invested with legal significance be decided. But no area of arbitration is guaranteed to be kept insulated from important issues of substantive law. A labor-management arbitration agreement could not be imagined to contain the caveat, "except when an important or novel construction of the National Labor-Management Relations Act is involved". As the Second Circuit said in

---

7. According to Cohn, Delaire's affidavit "a $2 broker is, simply stated, a broker's broker who executes transactions on the floor of the Exchange in response to or-

ders received either directly from a member firm's trading room or in response to a signal or request from a clerk or a broker on the floor of the Exchange."

Fallick v. Kehr, 369 F.2d 899, 903 (1966), "Logically, if the possibility that an arbitrator may make an unreviewable error of law alone justifies enjoining one arbitration, it requires enjoining all."[8] If, under 15 U.S.C. § 78j (b), for example, the cause of action— use of a deceptive device violative of the rules of an exchange—is suitable for arbitration, as we would most certainly think it is, we would not know where to draw the line beyond which arbitration—with all its benefits and all its risks—could not take place. We say this, while keeping in mind that any manifest misreading of securities legislation can be effectively challenged in court.

Reversed. Remanded with directions to enter a stay of litigation pending arbitration.

---

8.  We note that even Judge Friendly's dissent in *Fallick*, protesting largely unreviewable arbitration relating to "social legislation", *as opposed to* "business questions", 369 F.2d at 906, is inapplicable here.