**FIRST HERITAGE CORPORATION,**
Plaintiff-Appellee,

v.

**PRESCOTT, BALL & TURBEN,**
Defendant-Appellant.

No. 81–1583.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1983.

Decided July 12, 1983.

---

Robert S. Krause, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit,

Mich., William H. Baughman, Jr. (argued), Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant-appellant.

Kemp, Klein, Endelman & Beer, Raymond L. Morrow, Marvin Horowitz, Southfield, Mich., (argued), for plaintiff-appellee.

Before KRUPANSKY, Circuit Judge, PHILLIPS, Senior Circuit Judge, and HILLMAN, District Judge.*

HILLMAN, District Judge.

This is an appeal from a denial without prejudice of a stay pending arbitration in a securities action alleging common law fraud and violations of section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Plaintiff-appellee, First Heritage, filed a class action complaint alleging fraud and misrepresentation on the part of defendant-appellant, Prescott, Ball & Turben (PBT) and defendant Oppenheimer & Co.[1] arising from plaintiff's purchase of certain stocks from defendants. The class action question has not yet been considered by the district court.

PBT filed a motion in the district court to stay proceedings pending arbitration pursuant to the United States Arbitration Act (The "Arbitration Act"), 9 U.S.C. § 1, et seq., arguing that PBT and First Heritage, both members of the National Association of Securities Dealers (NASD), are obligated to arbitrate the dispute between them pursuant to the NASD's Code of Arbitration Procedure. First Heritage opposed the motion, maintaining that inasmuch as the suit had been filed as a class action and involved members of the public (non-NASD members) and other broker/dealers, its claims, and those of the class it seeks to represent, are exempt from arbitration pursuant to section 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a).

█ After a hearing, the district judge denied the motion without prejudice, indicating that the factual record before him was inadequate to properly balance the competing policies in the Arbitration Act and the 1934 Act. This appeal followed.

In *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1022 (6th Cir.1979), also involving allegations of federal securities laws violations, the court stated:

"28 U.S.C. § 1292(a)(1) grants jurisdiction to the courts of appeals in appeals from 'interlocutory orders of the district courts ... granting ... refusing or dissolving injunction, or refusing to dissolve or modify injunctions ....' We hold that the district court's order staying proceedings pending arbitration comes within this statutory language."

We now hold that the instant order denying a stay pending arbitration also falls within the statutory language for reasons discussed in *Mansbach.*[2]

---

* Honorable Douglas W. Hillman, Judge, United States District Court for the Western District of Michigan, sitting by designation.

1. Oppenheimer did not join in PBT's motion and is not a party to this appeal.

2. The majority acknowledges the concern, expressed by the dissent, of piecemeal appeals. However, in view of the limited number of appeals arising under 28 U.S.C. § 1292(a)(1), the affect, if any, should be minimal. The dissent's reliance on *New York, New Haven & Hartford R.R. Co. v. Lehigh & New England R.R. Co.,* 287 F.2d 678 (2d Cir.1961), is misplaced. The Second Circuit went to some length to point out that the action there, unlike the instant action, did not fall within 28 U.S.C. § 1292(a)(1)'s exception to the final order requirement contained in 28 U.S.C. § 1291. The applicable rule is that an order granting or

denying a stay is appealable under section 1292(a)(1) as an order granting or denying an injunction, if "(1) the original cause of action could have been maintained only at law in the days preceding the [merger of law and equity], and (2) the stay is sought to permit the interposition of an equitable defense." *USM Corp. v. GKN Fasteners, Ltd.,* 574 F.2d 17, 21 (1st Cir. 1978). By distinguishing *Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and by noting that there were no equitable issues involved, the *New York, New Haven* court clearly distinguished its decision from cases, including the instant action, which involve appeals under section 1292(a)(1). 287 F.2d at 678–679. Accordingly, the case is not determinative of appealability in the instant action. For a more comprehensive discussion of this historical anomaly *see Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.,* 651 F.2d 1244, 1247–1250 (8th Cir.1981); *Mans-*

■ At issue here are two conflicting legislative policies expressed in the 1934 Act and the Arbitration Act. Section 2 of the Arbitration Act[3] provides that certain agreements to arbitrate are valid, irrevocable and enforceable. Section 3[4] provides that a suit in federal court shall be stayed pending arbitration required by an agreement to arbitrate. Both parties agree that the NASD Code of Arbitration Procedure, upon which PBT relies, is an agreement to arbitrate within the scope of section 2 of the Arbitration Act and that the dispute is one which is subject to arbitration under the Code's arbitration provisions for NASD members.

Section 29(a) of the 1934 Act states: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of

any rule of an exchange required thereby shall be void."

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), an agreement to arbitrate was held violative of a similar provision in the 1933 Act, 15 U.S.C. § 77n.[5] Courts have consistently held that *Wilko's* holding and rationale are equally applicable to cases arising under the 1934 Act. *See Mansbach, supra,* 598 F.2d at 1030, and cases cited therein.

Various courts have, however, recognized in section 28(b) of the 1934 Act,[6] an exception to section 29(a)'s non-waiver provision. The exception was first recognized in *Brown v. Gilligan, Will & Co.,* 287 F.Supp. 766 (S.D.N.Y.1968), in an action involving two members of the American Stock Exchange, which like the NASD, is a self-regulatory organization within the meaning of

*bach, supra;* 9 Moore's Federal Practice ¶ 110.-20[3], pp. 240–246 (1983).

3. 9 U.S.C. § 2 provides:
    "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

4. 9 U.S.C. § 3 provides:
    "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

5. *Wilko* involved a suit by a purchaser of securities against a broker/dealer, with an agreement to arbitrate as part of the margin agreement in the sale. In holding the agreement to arbitrate invalid, the Court stated:
    "Even though the provisions of the Securities Act, advantageous to the buyer, apply, their effectiveness in application is lessened

in arbitration as compared to judicial proceedings. Determination of the quality of a commodity or the amount of money due under a contract is not the type of issue here involved. This case requires subjective findings on the purpose and knowledge of an alleged violator of the Act. They must be not only determined but applied by the arbitrators without judicial instruction on the law. As their award may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as 'burden of proof,' 'reasonable care' or 'material fact,' ... cannot be examined. Power to vacate an award is limited."
    346 U.S. at 435–436, 74 S.Ct. at 186–187 (footnotes omitted).

6. 15 U.S.C. § 78bb(b) states:
    "Nothing in this chapter shall be construed to modify existing law with regard to the binding effect (1) on any member of or participant in any self-regulatory organization of any action taken by the authorities of such organization to settle disputes between its members or participants, (2) on any municipal securities dealer or municipal securities broker of any action taken pursuant to a procedure established by the Municipal Securities Rulemaking Board to settle disputes between municipal securities dealers and municipal securities brokers, or (3) of any action described in paragraph (1) or (2) on any person who has agreed to be bound thereby."

the 1934 Act, 15 U.S.C. § 78c(a)(26). The *Brown* court held that section 28(b) provided an exception to section 29(a)'s provisions where the parties were both members of a self-regulatory organization. Although this Circuit has not decided this issue, many courts have accepted the *Brown* analysis. *See Tullis v. Kohlmeyer & Co.*, 551 F.2d 632 (5th Cir.1977) (partner in New York Stock Exchange (NYSE)-member firm seeking to arbitrate dispute with former partners); *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972) (NYSE members); *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2d Cir.1971) (action by NYSE member against non-member in which non-member successfully invoked compulsory arbitration rules of the Exchange); *In re the Revenue Properties Litigation Cases,* 451 F.2d 310 (1st Cir.1971) (NYSE members).

PBT argues that the above-cited cases, as a matter of law, require the district court to grant a stay whenever the parties to an action are members of a self-regulatory organization and the dispute is subject to arbitration under the organization's rules. That the issue is not so clear as a matter of law is demonstrated by a trio of decisions from the Second Circuit, an experienced Circuit in securities matters.

In *Coenen v. R.W. Pressprich & Co., supra,* and *Axelrod & Co. v. Kordich, Victor & Neufeld, supra,* the Second Circuit concluded that section 28(b) excluded from the non-waiver provisions of the 1933 and 1934 Acts an agreement to arbitrate between exchange members. But in *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), the court stated that "the exceptions to the general rule for disputes between brokerage houses over industry matters make sense only when limited to their facts." *Id.* at 437. The court suggested that "the public interest in the dispute, the degree to which the nature of the evidence ma[kes] the judicial forum preferable to arbitration and the extent to which the agreement to arbitrate [is] a product of free choice," are factors which should be considered in deciding whether to grant a stay.

*Id.* at 436. The court noted that the case was not merely one between private parties with public interest overtones, but rather a claim of "wholesale fraud of institutional dimension," and that the strong public interest supported the need for a judicial tribunal. Additionally, the " 'strong federal policy in favor of determining stock fraud in federal courts' " suggested a judicial setting. *Id.* at 437, *quoting Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970).

Likewise, the instant action consists of allegations of fraud, possibly involving numerous members of the public, whom First Heritage seeks to represent. Although *Wilko* and *Brown* and its progeny may limit the district court's discretion, it cannot be said, as a matter of law, that the court has no discretion. The district judge was correct in holding that balancing the conflicting policies required a more complete record of the factual background of the action.

Accordingly, the district court is AFFIRMED.

KRUPANSKY, Circuit Judge, dissenting.

Because I believe this Court lacks jurisdiction to review the lower court's order, I must, for the reasons set forth below, dissent from the majority's resolution of the merits of this controversy.

As the majority Opinion acknowledges, *ante* at 1206, the district court denied the motion, without prejudice, because the record, in the lower court's perception, was not sufficiently developed to enable the court to decide the propriety of staying the action pending arbitration. The following excerpts from the trial court's ruling are illustrative:

> [W]ithout a more fully developed record, underlying record, I cannot say that arbitration would satisfy what I believe to be the congressional policy explicated or implicated by 10(b), Section 10(b), the fraud operations.

All the arguments *Wilko* [*v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)] raised against arbitration, arbitrators don't have a record; arbitrators

don't give their reasons, arbitrators are not required to apply the law. I don't even know who the arbitrators would be, or how the arbitrators are chosen, or how the submission is made.

\* \* \* \* \* \*

I am going to allow [First Heritage Corp.] to take discovery and I am not saying though that at a future point, if you can present a proper argument, that I would not consider [a motion to stay] again in the context of this.

I don't think I know enough to say that this dispute goes to arbitration and I am relying on *Wilko* to make that finding.

\* \* \* \* \* \*

On the record now before me I am not satisfied it belongs in arbitration. I may never be satisfied. I am simply not precluding you from, again, asserting it on a more complete record. I can't tell you what record to put it on, I can't be that presumptuous.

It is obvious from the foregoing comments by the district court that the lower court did not deny the request for a stay on the merits, but, rather, because the court considered the record incomplete. This is clearly distinguishable from *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979) in which the lower court reached the merits of the issue and granted a stay.

The instant matter is, however, very similar to *New York, New Haven and Hartford R.R. Co. v. Lehigh and New England R.R. Co.,* 287 F.2d 678 (2d Cir.1961). In that case the plaintiffs moved to stay proceedings on the counterclaims of defendant pending a determination by the Interstate Commerce Commission. The district court denied the stay and plaintiff appealed.

The Second Circuit held that the order was not appealable, stating, in pertinent part:

The denial of the stay is clearly not appealable. The district judge refused to grant the stay not because he decided, as a matter of law, that no stay was appropriate although a similar claim was then pending before the Interstate Commerce Commission, but because he found "simply too many gaps in the proof to reach any definitive conclusion." The motions were denied without prejudice to renew. The decision now being appealed, therefore, was altogether tentative. It amounted to a postponement of the merits of the motion to stay until the issues became more clearly defined.

*Id.*

The reasoning of the Second Circuit is directly applicable and should be followed in this case. By accepting jurisdiction of this case pursuant to 28 U.S.C. § 1292(a)(1), the majority unduly broadens the "limited exception to the final judgment rule" that provision was intended to establish and ignores "the general congressional policy against piecemeal review." *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). In sum, the decision of the majority is an exceedingly undesirable legal precedent. Accordingly, I dissent.