MORGAN, OLMSTEAD, KENNEDY & GARDNER INCORPORATED, Plaintiff,

v.

UNITED STATES TRUST COMPANY OF NEW YORK, Bruce Hintze, Moseley, Hallgarten, Estabrook & Weeden, Inc. and Securities Settlement Corporation, Defendants.

No. 83 Civ. 8196 (WCC).

United States District Court, S.D. New York.

May 20, 1985.

Jacobs Persinger & Parker, New York City, for plaintiff; Irving Parker, Maxwell E. Cox, Alan Schutzman, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Moseley, Hallgarten, Estabrook & Weeden, Inc.; Robert J. Hausen, W. Foster Wollen, New York City, of counsel.

Gaston Snow Beekman & Bogue, New York City, for defendant Securities Settlement Corp.; Martin P. Unger, Alice F. Chen, New York City, of counsel.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action is one of several related cases arising out of a complicated series of securities transactions by which an individual named Victor Schipa ("Schipa") allegedly utilized the services of various individuals and financial institutions to defraud plaintiff Morgan, Olmstead, Kennedy and Gardner, Inc. ("Morgan Olmstead") of certain securities by means of deceptive devices and misrepresentations. It is not necessary to detail here the mechanics of the fraudulent scheme; however, brief mention of the various parties and certain background facts is necessary to an under-

standing of the issues now before the Court.

## Background

Morgan Olmstead is a securities broker-dealer. In addition to buying and selling securities, Morgan Olmstead also lends them to other broker-dealers and financial institutions. The essence of Morgan Olmstead's claim in this action is that it made stock loans to Schipa, in his capacity as an officer of Girard Wilde & Co., Inc. ("Girard Wilde") and Carlisle Institutional Services, Inc. ("Carlisle"), with the understanding that Girard Wilde and Carlisle would act as stock loan "finders" by locating borrowers and arranging loan transactions. According to Morgan Olmstead, Schipa did not arrange stock loans through his two companies, but instead opened an account in the name of Girard Wilde with defendant Moseley, Hallgarten, Estabrook & Weeden, Inc. ("Moseley"), and then arranged for Moseley to make short sales on that account. He allegedly used the stock loaned by Morgan Olmstead to cover those short sales, thereby converting the stocks to his own use and causing Morgan Olmstead considerable losses.

Morgan Olmstead alleges that Moseley placed sales orders for Schipa with knowledge that neither Girard Wilde nor Carlisle had stock with which to make delivery to purchasers. Moreover, according to plaintiff, defendants Bruce Hintze ("Hintze"), United States Trust Company of New York ("U.S. Trust") and Securities Settlement Corporation ("SSC") assisted in arranging, transferring and clearing the transactions with knowledge or in reckless disregard of facts which should have led them to realize that the stocks were *loaned* by Morgan Olmstead, but were subsequently delivered and sold to purchasers for the benefit of Schipa.

Formal proceedings among the parties began in late 1982 or early 1983, when Morgan Olmstead filed with the New York Stock Exchange ("NYSE") a Demand for Arbitration and Statement of Claim against Moseley and SSC for their parts in the Schipa venture. The arbitration was commenced pursuant to the constitution and rules of the NYSE, which provide that controversies between member firms are to be arbitrated. On April 15, 1983, all three parties agreed to suspend the arbitration proceedings pending thirty days' notice from Morgan Olmstead that it intended to go forward. The following November, Morgan Olmstead filed suit in this district against defendants Hintze and U.S. Trust, neither of which was or is a NYSE member.[1]

In its complaint against Hintze and U.S. Trust, Morgan Olmstead alleged that Schipa's activities violated § 10(b) of the Securities and Exchange Act of 1934 ("the 1934 Act") and Rule 10b–5 promulgated thereunder, and that the defendants aided and abetted Schipa's fraud. U.S. Trust then filed a third-party complaint, bringing Moseley and SSC into the federal action.

On June 17, 1984, Morgan Olmstead amended its complaint to add Moseley and SSC as primary defendants along with U.S. Trust and Hintze.[2] Upon receiving the amended complaint, U.S. Trust promptly filed an amended answer asserting twenty-one cross-claims against Moseley and SSC for indemnity and/or contribution. For their parts, Moseley and SSC responded by advising Morgan Olmstead that under the NYSE constitution and rules, the three member firms were required to arbitrate their controversies. When Morgan Olm-

---

1. Morgan Olmstead filed a separate action against Victor Schipa, which is also pending before me, and another action against its insurance carrier, *Federal Insurance Company.* That action is pending before the Honorable Mary Johnson Lowe of this Court, and I have advised the parties that the issues before me will not be tried until the matter of insurance coverage has been resolved. I so ruled in order to delay trial until it has been determined whether Morgan Olmstead or its insurer should litigate the claims before me.

2. In addition to the counts of aiding and abetting Schipa's Rule 10b–5 violation, Morgan Olmstead has alleged that Moseley and SSC committed common law fraud, conversion, breach of contract, breach of duty, and violations of stock exchange rules.

stead refused to go forward with the arbitration it had instituted earlier, Moseley and SSC moved pursuant to § 3 of the Federal Arbitration Act ("the Arbitration Act"), 9 U.S.C. § 1 *et seq.*, to stay Morgan Olmstead's district court proceedings against them pending arbitration. Morgan Olmstead then cross-moved to stay arbitration, and the parties' cross-motions, together with voluminous supporting papers, are now before the Court.[3]

Moseley and SSC argue, in essence, that they have a right to arbitrate their dispute with Morgan Olmstead pursuant to the constitution and rules governing NYSE members, and that the presence of non-members in this controversy does not defeat that right. Morgan Olmstead, on the other hand, insists that the controversy among the exchange members must be viewed as part of the larger dispute, and argues that the peculiar procedural posture of the case renders resort to arbitration of the claims against Moseley and SSC inappropriate. Plaintiff asserts, in the alternative, that Moseley and SSC waived their right to arbitrate when they agreed that the suspended arbitration proceedings would resume only on thirty days' notice from Morgan Olmstead. For the reasons below, the Court will grant Moseley and SSC the stay they seek, and will order Morgan Olmstead to go forward with its claims against them in arbitration.

*Discussion*

I. The Agreement to Arbitrate

Moseley and SSC have moved to stay this action pursuant to § 3 of the Arbitration Act, and thus the Court's analysis begins with that section. Title 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the

issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Without question, Morgan Olmstead, Moseley and SSC entered into an agreement to arbitrate disputes arising among them. As members of the NYSE, they are governed by Article VIII, § 1 of the NYSE Constitution, which provides in pertinent part:

Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, ..., be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Governors.

As discussed by Judge Cooper of this Court in *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 769 (S.D.N.Y.1968), the constitution and rules of a stock exchange "constitute a contract between all members of the exchange with each other and with the exchange itself."

Morgan Olmstead, Moseley and SSC each having entered into an agreement to arbitrate disputes with other exchange members, and having done so as a condition precedent to membership in the NYSE, *see* NYSE Constitution Article IX, § 6, the Court must stay any trial of the controversy among them, pursuant to § 3 of the Arbitration Act, absent some justification sufficiently compelling to overcome the strong federal policy favoring arbitration. Morgan Olmstead asserts that this case presents just such compelling features, premising its argument on authorities establishing a strong interest in preserving the federal courts as exclusive forums for the

**3.** At a pretrial conference held January 25, 1985, after the cross-motions were fully submitted, the Court entered a temporary stay of arbitration. That Order was followed by a flurry of correspondence from both counsel, a portion of

which was solicited by the Court in view of the Supreme Court's recent decision in *Dean Witter v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

resolution of federal securities fraud claims.

## II. Arbitration of Federal Securities Fraud Claims Between Exchange Members

The Securities Act of 1933 and the Securities Exchange Act of 1934 have customarily been construed as reflecting congressional intent to keep federal securities disputes out of arbitration and in the courts. *See generally Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (1933 Act); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970) ("This type of question concerning fraud within the meaning of Rule 10b–5 is properly litigated in the courts where a complete record is kept of the proceedings and findings and conclusions are made.... Congress provided that questions arising under [the Securities Acts] were not to be determined in arbitration proceedings (but rather in the courts) even if the contract between the parties contained an arbitration provision.").

In recognition of this policy, the United States Supreme Court and the lower federal courts have interpreted certain "nonwaiver" provisions in these statutes as prohibiting the enforcement of pre-existing agreements to submit federal securities disputes to arbitration. In *Wilko v. Swan,* for example, the Supreme Court held that § 14 of the 1933 Act, 15 U.S.C. § 77n, which provides that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter ... shall be void," bars enforcement against an investor of an agreement to arbitrate future disputes. The Court found that such an agreement is a "stipulation" within the meaning of § 14, and that the right to be heard in a judicial forum is the kind of "provision" that cannot be waived. 346 U.S. at 434–35, 74 S.Ct. at 186–87. Underlying this conclusion was an acknowledgment that the 1933 Act was enacted for the purpose of protecting investors; the Court noted that when a purchaser waives his right to sue in court, he surrenders "one of the advantages the Act gives him ... at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary." *Id.* at 435, 74 S.Ct. at 187. Section 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a), which is substantially similar to the non-waiver provision discussed in *Wilko,* has been similarly construed. *See, e.g., Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977).

If *Wilko* had created an absolute bar to the arbitration of all federal securities fraud claims, the instant controversy would be easy to resolve. The federal courts have recognized an important exception to the non-waiver rule, however, which is relevant here. In a line of cases following *Brown v. Gilligan, Will & Co.,* 287 F.Supp. 766 (S.D.N.Y.1968), the courts in this circuit and elsewhere have relied on § 28(b) of the 1934 Act, 15 U.S.C. § 78bb(b), to exempt from the non-waiver provision controversies between members of the stock exchanges. That section states, in relevant part:

> Nothing in this chapter shall be construed to modify existing law with regard to the binding effect on any member ... of any [exchange] of any action taken by the authorities of such [exchange] to settle disputes between its members....

In *Brown,* the court drew a distinction between the purposes underlying the 1933 and 1934 Acts, noting that the earlier statute was designed primarily to protect the investing public, and was not intended to protect dealers from the improprieties of fellow dealers. 287 F.Supp. at 772. According to the court, Congress "assumed that dealers could fend for themselves." *Id.* The court highlighted legislative history establishing a clear congressional intent to create in the 1934 Act a comprehensive scheme of exchange self-regulation, and concluded on that basis that where stock exchange members have agreed to arbitrate their "intramural disputes" before the stock exchange, a court giving effect to that agreement does no violence to the

1934 Act, but instead, furthers the goals of its framers.

> The action taken by [the Exchange] in prescribing rules ... binding on its members and making arbitration imperative, constitutes "action taken by the authorities of such exchange to settle disputes between its members." Therefore, the instant agreement to arbitrate, which owes its very existence to such rules of the Exchange, must be exempted from the scope of § 29(a) if § 28(b) is to be given effect. ... This construction is based not only on the clear language of § 28(b), but also on that provision's place in the overall scheme of self-regulation set up by the 1934 Act.

*Brown,* 287 F.Supp. at 774–75 (footnotes omitted).

The stock exchange member exception established in *Brown* has since been adopted by the Second Circuit as well as other Circuit Courts of Appeals. *See Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1214 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972) ("We fully agree with the reasoning in *Brown* ... that the arbitration clause contained in the New York Stock Exchange Constitution is precisely the kind of self-regulatory provision called for by the 1934 Act. Instead of violating the policy behind the Act, as appellant contends, arbitration in this case furthers that policy."); [4] *In re the Revenue Properties Litigation Cases,* 451 F.2d 310 (1st Cir.1971); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 636 (5th Cir. 1977) ("The crucial issue ... is whether the party seeking to avoid arbitration is a member of the Exchange and thus has agreed to arbitration of disputes. If this is the case, as here, then according to *Brown* ... § 28(b) is applicable and overrides the non-waiver provisions which were the basis of *Wilko.*"); *DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255 (9th Cir.1981). *See also Ax-*

*elrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2d Cir.1971) (extending *Brown* rationale to member/non-member disputes in which non-member seeks to compel arbitration).

Although the federal courts have broadly construed this "exchange member exemption" since *Brown,* the exception, no less than the non-waiver rule, defies unconditional application. The courts have recognized that under certain circumstances, disputes involving exchange members may implicate factors rendering the claims "inappropriate for enforcement by arbitration." In *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977), for example, the Second Circuit was presented with claims brought under the Bankruptcy Act, the Securities Exchange Act of 1934, various state laws and common law. The trustee of the bankrupt corporation, which was a member of the NYSE, sued four individuals, several corporate members of the NYSE, and the stock exchange itself. The exchange members moved in the district court to stay the action pending arbitration of their controversies with the trustee for the bankrupt corporation, and the district court granted that motion. The Court of Appeals reversed.

The appellate court stated that *Brown* and its progeny created a "limited exception to the policy behind *Wilko v. Swan,*" and that "the exceptions to the general rule for disputes between brokerage houses over industry matters make sense only when limited to their facts." 548 F.2d at 437. The court pointed out that the case presented not "a mere internal brokerage industry squabble," but rather "a claim of wholesale fraud of institutional dimension." *Id.* Noting in addition that the claim was brought by a bankruptcy trustee on behalf of hundreds of creditors, the court determined, after a careful analysis of compet-

---

**4.** In *Coenen,* the Court of Appeals offered two reasons why the dispute in that case could be distinguished from the situation in *Wilko.* It cited the differences in purpose between the 1933 and 1934 Acts, and it cited the fact that *Wilko* involved a pre-dispute agreement to arbitrate while *Coenen* involved a post-dispute agreement to arbitrate. Although the case be-

fore me involves a pre-dispute agreement, I do not believe this pre-dispute/post-dispute factor should have any bearing in this context. If the agreement to arbitrate arises when a firm joins the stock exchange, and the courts enforce only those agreements entered into after disputes arise, then the stock exchange member exemption is rendered all but meaningless.

ing public policy interests, that the claim was of a character inappropriate for enforcement by arbitration. *Id.* at 436–38.

Recognizing that the instant action involves neither a simple "internal brokerage industry squabble" nor a "claim of wholesale fraud of institutional dimension," I turn to an analysis of whether Morgan Olmstead should be compelled to arbitrate its disputes with Moseley and SSC while proceeding in this forum against the defendants not subject to arbitration agreements, or whether, as Morgan Olmstead persuasively argues, the peculiar posture of this case renders arbitration a "meaningless" and "inappropriate" option for resolving these disputes. Pl.Mem. in Opposition to Stay Pending Arbitration at 15–16.

Morgan Olmstead does not deny that it is subject to an agreement to arbitrate disputes with Moseley and SSC, nor does it contend that it is relieved of its obligation under that agreement simply because its claims against Moseley and SSC arise under federal securities laws. In fact, Morgan Olmstead concedes that if this lawsuit could be viewed as a simple intramural dispute among members of the exchange, Moseley and SSC might be entitled to the relief they seek. Pl.Mem. in Opposition to Stay Pending Arbitration at 2. The instant question centers around Morgan Olmstead's vigorous assertion that the lawsuit cannot fairly be characterized as an "intramural dispute" that should be arbitrated before the NYSE in accordance with the policies underlying *Brown,* but must instead be viewed as a "massive securities fraud" which was perpetrated in the first instance by a stock exchange non-member, and which extends "beyond the walls of the Exchange." *Id.* at 2–3. In support of its cross-motion to stay arbitration pending trial of all claims in this forum, Morgan Olmstead focuses primarily on the inefficiencies, the delays and the administrative difficulties inevitably attendant to the splitting of claims in a complex action. Plaintiff forcefully argues that the presence of non-member defendants with cross-claims against member defendants virtually ensures that the entire controversy will eventually have to be litigated in this Court, regardless of whether arbitration between members occurs first. Thus, in Morgan Olmstead's view, neither the specific federal policy favoring exchange self-regulation, nor the general policy of encouraging expedient and economical resolution of disputes through arbitration, would be furthered by enforcement of the arbitration agreement in this case.

■ Were it not for recent Supreme Court authorities upholding the contractual right to arbitrate in the face of arguments such as those presented by Morgan Olmstead, I might well have been persuaded to deny Moseley and SSC the arbitration order they seek. Having reviewed all the authorities and arguments submitted by the parties, I am satisfied that arbitration of Morgan Olmstead's claims against Moseley and SSC will create substantial administrative problems, and that the swiftest, simplest and most economical method of resolving the claims in this action would be for this Court to invoke jurisdiction over stock exchange members and non-members alike, and to try all claims in one action.[5]

---

**5.** If Morgan Olmstead proceeds immediately to arbitration against Moseley and SSC, an award will probably be issued prior to litigation of the claims remaining before me. I can foresee at least three possible scenarios, none of which furthers the policies of expedience and judicial economy.

If Morgan Olmstead fails to prove its case in arbitration, it will likely pursue U.S. Trust in this forum. U.S. Trust has non-arbitrable derivative claims against Moseley and SSC that cannot be severed; thus, the stock exchange members will all remain in this action. The arbitrator's decision will have no *res judicata* effect on U.S. Trust because U.S. Trust is not a party to that action. Therefore, in the context of U.S. Trust's claims, a jury will be called upon to make a *de novo* review of the liability issues previously determined and, if necessary, to apportion relative fault among exchange members. Nothing will have been gained by arbitration.

If Morgan Olmstead prevails in arbitration but fails to collect the full measure of damages it seeks, it may pursue U.S. Trust for the remainder. Once again, U.S. Trust will not have been a party to the arbitration, and therefore cannot be foreclosed from relitigating Moseley's and SSC's liability. As in the situation posed above, neither time nor effort will have been saved by arbitration.

However, I do not believe this is an option available to me.

Two recent Supreme Court cases, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Dean Witter Reynolds, Inc. v. Byrd,* — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), have considerable bearing on the issues at hand, and therefore warrant close attention. Each of these cases supports the proposition that where arbitrable and non-arbitrable claims are joined, any interest in avoiding piecemeal litigation must give way to the interest in enforcing the contractual agreement to arbitrate.

The Court was presented in *Dean Witter v. Byrd* with a challenge to the "intertwining doctrine," under which district courts in three circuits were permitted, in the exercise of their discretion, to deny arbitration of otherwise arbitrable claims that were factually and legally intertwined with non-arbitrable claims. The dispute arose when Dean Witter, which had been sued by an investor alleging that it violated both federal securities laws and state-law provisions, sought an order severing the pendent state claims and compelling their arbitration.[6] The district court denied Dean Witter's motion and the Court of Appeals for the Ninth Circuit affirmed, applying the intertwining doctrine.

The Supreme Court reversed, rejecting the argument that collateral estoppel problems might arise if arbitration of an "intertwined" state claim were to precede the federal court trial, and rejecting also the suggestion that the inefficiency and redundancy of bifurcated proceedings would thwart the purposes of the Arbitration Act. The Court ruled that the Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that [the court] *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," even where "the result would be the possibly inefficient maintenance of separate proceedings in different forums." 105 S.Ct. at 1241. The Court found support for this conclusion in the legislative history of the Arbitration Act, which establishes that "the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Id.* at 1242. Byrd's suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims was flatly and firmly rejected by the Court:

> [P]assage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation.

*Id.* (footnote omitted).

The instant dispute involves federal securities fraud claims rather than pendent state claims, and thus *Dean Witter v. Byrd* might be viewed as distinguishable from the present case on one level; I find this distinction insignificant, however. Having concluded above that the stock exchange member exception to the general policy against arbitrating federal securities fraud claims removes any bar to enforcement of the contractual obligation incurred by member firms when they agree to comply with the stock exchange constitution and

---

Finally, even if Morgan Olmstead collects the full measure of its alleged damages in arbitration, that proceeding may not terminate the controversy. Moseley and SSC might then wish to pursue U.S. Trust for contribution toward Morgan Olmstead's recovery.

Thus, it appears that regardless of whether Moseley and SSC go to arbitration against Morgan Olmstead, this entire controversy may well be tried here. Such a result would certainly not further congressional intent to "keep disputes between members out of the courts." *Coenen v.*

*R.W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2d Cir.1972). Instead of one expeditious proceeding, there may be a complete duplication of effort and an extended delay in the final resolution of this controversy. The concomitant potential for inconsistency between the determinations of arbitrator and jury creates additional concern.

6. In *Dean Witter v. Byrd,* there was no motion to compel arbitration of the federal securities fraud claims.

rules, I see no reasoned basis upon which to exempt otherwise arbitrable federal securities claims from the scope of the *Dean Witter v. Byrd* ruling.

In addition, although Morgan Olmstead has actively pursued only its federal claims against Moseley and SSC, there remain in its amended complaint a variety of state law causes of action against these same parties, including, *inter alia*, claims of common law fraud and conversion. Morgan Olmstead has down-played the significance of the state law claims. At a conference held May 3, 1985, counsel for plaintiff explained that these claims are based on the same facts that underlie the federal claims; he appeared to suggest that they lacked independent vitality, and he expressed no interest in pursuing them. Under *Dean Witter v. Byrd*, however, defendants are entitled to demand immediate arbitration of these claims no matter how intertwined they may be with the federal claim. Thus, even if I were not convinced that *Dean Witter v. Byrd* mandates arbitration of the federal claims, I would be unpersuaded by plaintiff's argument that splitting the action would result in redundant and inefficient proceedings because, in all likelihood, there will be an arbitration in any event.

Of course, the instant case may be complicated somewhat by the presence of stock exchange non-members who cannot be compelled to arbitrate their disputes with Morgan Olmstead, Moseley or SSC. As Morgan Olmstead has forcefully argued, the existence of cross-claims by non-member defendants against member defendants creates a real possibility that even if arbitration is ordered, this Court will ultimately be forced to determine the extent of Moseley's and SSC's involvement in the Schipa scheme, and the extent of their liability. In the scenario suggested by plaintiff, the Court would dispatch the exchange members to arbitration, thus upholding Moseley's and SSC's expectations, but then proceed to nullify the effect of any arbitrator's ruling by entertaining the same issues in the context of subsequent third-party litigation here.

To the extent that this position merely reflects efficiency concerns, *Dean Witter v. Byrd* adequately addresses the argument. However, to the extent that plaintiff's position reflects a threat to the policy underlying *Dean Witter v. Byrd* —that of upholding the legitimate expectations of contracting parties—it merits a few comments.

First of all, federal courts have been faced before with multi-defendant cases in which some but not all of the parties are subject to arbitration agreements. As a rule, the Arbitration Act mandates that arbitration agreements "be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cohen Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983). In *Moses H. Cohen Hospital*, respondent construction company had direct claims against petitioner hospital, which in turn had claims for indemnity against an architect. The hospital was subject to an arbitration agreement with the construction company, but not with the architect. The Supreme Court recognized that bifurcated proceedings might result if the agreement were enforced, but considered the potential unavoidable:

> It is true ... that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune ... occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.

460 U.S. at 20, 103 S.Ct. at 939 (footnote omitted, emphasis in original). *See also Hamilton Life Ins. Co. of New York v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 609 (2d Cir.1969) ("The District Court also correctly noted that there is no impediment to enforcing an agreement to arbitrate as between two parties in a dispute involving a multi-party agreement.").

This general rule makes sense, especially when applied to cases involving complex

securities transactions which can often be effected only through the services of many individuals and financial institutions, some of which are exchange members and some of which are not. If the presence of a cross-claim or a third-party claim for contribution or indemnity involving a non-member of the exchange were sufficient to defeat an obligation to arbitrate, it seems to me that parties seriously interested in avoiding arbitration could readily structure their pleadings with that objective in mind. Such a result would certainly undermine congressional intent that member disputes be arbitrated.

Second, while there may indeed be some possibility that the same issues presented and resolved in arbitration would surface again in subsequent litigation, that threat is not necessarily peculiar to situations involving more than two parties. Although the question remains unsettled, the Supreme Court has suggested that an unappealed arbitration decision may not have any collateral estoppel effect in subsequent federal proceedings. *See Dean Witter v. Byrd*, 105 S.Ct. at ——. If no preclusive effect were given, a plaintiff and defendant with federal and state claims might proceed to arbitration of their state claims pursuant to *Dean Witter v. Byrd*, and later litigate the same issues, albeit couched in slightly different legal terms, in a federal court. No less than in the instant case, the judge might then be called upon to "nullify" the decision of the arbitrator.

Finally, I note that plaintiff's concerns might never materialize; after arbitrating its claims against Moseley and SSC, Morgan Olmstead might well decide to forego prosecution of its claims against U.S. Trust and Hintze. If soundly defeated in arbitration, it might attempt to cut its losses by settling or discontinuing the federal action. By the same token, if wholly or even partially successful in that forum, Morgan Olmstead might also be inclined to spare itself further litigation. In either case, there is no assurance that resort to arbitration would prove a hollow gain for any of the parties.

For all the foregoing reasons, I conclude that the controversy among Morgan Olm-stead, Moseley and SSC is appropriate for resolution by arbitration, despite the presence of other parties in the larger dispute who are not subject to any arbitration agreement. I turn briefly, then, to Morgan Olmstead's argument that Moseley and SSC waived their right to arbitrate.

### III. Waiver of Arbitration

■ On April 15, 1983, several months after Morgan Olmstead commenced arbitration proceedings against Moseley and SSC, counsel for Moseley wrote a letter to the arbitration counsel of the New York Stock Exchange. The text of the letter is set forth fully below:

> This will confirm our telephone conversation of earlier today in which you granted the joint request of the three parties to the captioned proceeding that the time for Respondents Securities Settlement Corp. and Moseley, Hallgarten, Estabrook & Weeden Inc. to respond to the Demand for Arbitration by Morgan Olmstead, Kennedy & Gardner Inc. be extended from April 18, 1983 to 30 days after Morgan Olmstead gives notice to the Exchange and Respondents of the commencement of the 30-day period.

Klug letter of April 15, 1983, Ex. B to Chen Aff. Primarily on the basis of this correspondence, Morgan Olmstead asserts that its adversaries have waived their right to arbitrate. Moseley and SSC characterize the waiver argument as "nonsense."

Morgan Olmstead argues that the April 15, 1983 letter reflects Moseley's and SSC's unconditional agreement "to postpone arbitration indefinitely, subject to resumption only when, if ever, Morgan Olmstead requested it." Parker letter of March 7, 1985. *See also* Parker letter of March 18, 1985 ("In unambiguous language, SSC and Moseley ... knowingly yielded to Morgan Olmstead any right to resume the arbitration."). According to plaintiff, defendants' waiver is further established by their aggressive participation in extensive discovery proceedings connected with this lawsuit, and their motion to compel arbitra-

tion is a breach of the agreement memorialized in the April 15, 1983 letter.

As indicated above, counsel for Moseley and SSC vigorously refute Morgan Olmstead's contention that the April 15 letter reflects a waiver of their right to compel arbitration:

> By letter dated April 15, 1983, the parties agreed to suspend the arbitration for an unspecified time. At the time, it was rational to assume that if Morgan Olmstead wanted to proceed with claims against SSC and Moseley, it would do so in the arbitration it had commenced and that Morgan Olmstead, as the petitioner, would be the party that would want eventually to revive the arbitration. Thus, the letter stated that Morgan Olmstead could continue with its arbitration by giving 30-days notice. In so providing, the parties did not intend to bar SSC or Moseley from themselves reviving the arbitration by filing their answers nor did the parties intend that any party was waiving the right to arbitrate. The intent of the letter was simply to provide a period during which the parties might resolve their dispute short of a hearing.

Hausen letter of March 15, 1985 (footnote omitted). Counsel for Moseley indicates that it wrote the letter in question, and that it certainly did not intend to accord plaintiff complete control over the timing of the arbitration. Both defendants assert, moreover, that they were perfectly entitled to participate in discovery within the context of this action, as they are parties to non-arbitrable claims brought by defendant U.S. Trust.

I cannot agree with Morgan Olmstead's interpretation of the April 15, 1983 letter. The parties have not explained why they decided to suspend the arbitration. However, I see no "unconditional agreement" to resume *only* on plaintiff's request, nor do I find "unambiguous language" by which Moseley and SSC yielded their valuable right to compel arbitration. Moseley's interpretation of the letter, on the other hand, makes perfect sense. As of April 15, 1983, this arbitration was the only pending action arising out of the Schipa venture; Moseley and SSC were respondents in that action, and given Morgan Olmstead's apparent willingness to suspend the arbitration, there was simply no reason for them to anticipate or look forward to reviving it. They did not seek to reinstitute the arbitration proceedings until Morgan Olmstead asserted direct claims against them, but only at that point was it apparent that Morgan Olmstead sought to pursue its claims in an improper forum.

The suggestion that defendants' participation in discovery proceedings should also constitute a waiver is similarly without merit. As Morgan Olmstead itself has forcefully argued, the presence of U.S. Trust's cross-claims ensures that Moseley and SSC will be parties to the federal action regardless of whether arbitration of Morgan's direct claims is ordered. Defendants' aggressive defense to those cross-claims effects no waiver.

### Conclusion

For all the foregoing reasons, the Court concludes that Morgan Olmstead must assert its direct claims against Moseley and SSC before an arbitrator of the NYSE. Accordingly, the temporary stay of arbitration issued on January 25, 1985 is hereby lifted.

Plaintiff's claims against U.S. Trust and Hintze, together with all non-arbitrable claims brought by these parties against Moseley and SSC, will proceed before this Court. However, in accordance with my oral ruling of November 16, 1984, these claims will not be tried until such time as the litigation between Morgan Olmstead and its insurance carrier, Federal Insurance Company, has concluded.

SO ORDERED.